ROBERT J. WALL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wall v. Commissioner
Docket No. 2794-77.
United States Tax Court
T.C. Memo 1978-369; 1978 Tax Ct. Memo LEXIS 146; 37 T.C.M. (CCH) 1520; T.C.M. (RIA) 78369; September 14, 1978, Filed Robert *148 J. Wall, pro se. Joseph F. Maselli, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the calendar year 1974 in the amount of $ 798.90. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving the following issues for our decision: (1) Whether petitioner is entitled to a deduction for expenses for household and dependent care, and if so, in what amount; (2) whether petitioner is entitled to a deduction for interest paid on a business loan in excess of $ 529.68; and (3) whether petitioner was subjected to two examinations of his books and records for the year 1974 within the meaning of section 7605(b), I.R.C. 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner, who resided in Mahwah, New Jersey, at the time of the filing of his petition in this case, filed a timely Federal income tax return for *149 the calendar year 1974. From 1972 until October 1, 1974, petitioner was employed by the United States Steel Company (U.S. Steel) as an Assistant Manager of Transportation in the New York office of their International Division. A part of petitioner's duties in his employment consisted of being the company's Chief Marine Surveyor. In this capacity, petitioner was required to travel to the aid of troubled ships throughout this country and the world. Also, during 1974 petitioner was self-employed as a private marine consultant and sometimes traveled in connection with his self-employment. On October 1, 1974, U.S. Steel officially closed the New York office at which petitioner was employed. From that date until the end of November, petitioner was retained as a Senior Manager to supervise closing the office. For the remainder of 1974, the month of December, petitioner was on automatic vacation from U.S. Steel. During the year 1974, petitioner paid all of his household expenses. He was a widower whose wife had died in 1965. He had 6 children, 5 boys and a girl. [2] The eldest boy was 21 in 1974 and was away from home attending college at the University of Miami. From January *150 through May of 1974 when he graduated, Mark, 19, attended Mahwah High School. Gregory, 17, and Brian, 16, attended Mahwah High School and the twins, David and Dylis, 13 going on 14, attended the local middle school from January through May and from mid-September through December 1974. In the summer of 1974, the older boys were away from home at times. That summer, however, the twins did not leave home, did not attend school, and did not work except for occasional odd jobs. On a normal school day, the twins left for school around 7:30 a.m. and returned home between 2:000 and 2:15 p.m. When petitioner was not out of town on business, he left for work at 7:30 a.m. and returned home between 7:00 and 8:00 p.m. [3] Petitioner did not employ a maid or housekeeper. The family members did the necessary cooking and cleaning. When petitioner was in town, it was his policy to leave the eldest child in charge of the household after school. Petitioner's nearest relatives lived in Cranston, Rhode Island, and Seekonk, *151 Massachusetts. Petitioner generally did not leave the children by themselves when he was traveling during the school year or when the children were out of school during the summer months. It was his practice to hire part-time help during the school year, and full-time help during the summer months, to stay with the children. Because the twins had reading difficulties, when possible petitioner employed in these positions licensed teachers with an interest in English and Reading. Usually the persons employed were persons recommended by employment agencies or friends. In 1974, petitioner employed a licensed teacher, Arden Flagg, to stay with the children during the summer months. He also employed Miss Flagg to stay with the children most of the times he was away from home on business during the school year. Miss Flagg lived in mid-town Manhattan. When she was employed by petitioner, her principal duties were to look after the twins, including helping them with their reading problems. In addition to looking after the twins, Miss Flagg was in charge of the household during petitioner's absence. During 1974, *152 petitioner made one business trip to Holland. His other business trips that year were to Cleveland, Chicago, San Francisco, Houston, New Orleans, and Miami. Petitioner made a total of 16 to 18 business trips in 1974 and was thus away from home between 45 and 60 days during that year. His longest trip lasted 11 days and some of the trips required him to be away only one night. In mid-May, a few weeks before school ended, Miss Flagg began full-time employment at petitioner's home. She continued her full-time employment until school opened in September. Petitioner paid her $ 500 a month for her full-time services. During this period she lived in petitioner's home and received room and board in addition to her cash wages. She would take a day or two off per week, the actual days taken depending on petitioner's travel schedule. While school was in session from January until mid-May and from mid-September through December, petitioner employed Miss Flagg only when he was away on business overnight. Petitioner paid Miss Flagg in cash or with money orders. He did not have a checking account. Petitioner considered Miss Flagg to be an independent contractor and, therefore, did *153 not report her employment for Social Security purposes. He did not file a Form 1099 Information Return reporting the amounts he paid to Miss Flagg. He thought it was not necessary to file such a form reporting amounts paid for child care services unless the total amount was over $ 7,000. [4]
On August 29, 1972, petitioner obtained a 5-year small business loan from the Community Bank of Bergen County. The entire obligation, principal and interest, was evidenced by a single promissory note for $ 11,905.80. The loan was in the amount of $ 9,257.17. The $ 11,905.80 stated as the amount of the loan was discounted by $ 2,648.63. The note also provided for a reduction for insurance of $ 257.17 so that petitioner actually received $ 9,000 of proceeds from the loan. The interest rate was described as "varied." The note called for 60 consecutive monthly payments of $ 198.43. The first payment was due on October 15, 1972. Petitioner made each installment payment when it became due throughout the year 1974. The portion of each $ 198.43 payment which constituted interest was not specifically stated on the face of the note. *154 The note, however, further provided: Upon default in the payment of any installment on its due date, the entire unpaid balance of the loan hereby evidenced shall, at the election of the Bank, become immediately due and payable. When the maturity of the unpaid balance of the loan evidenced by this note is accelerated as provided herein, the Bank may charge interest at the legal rate from the date such acceleration takes place upon the difference between the amount of the unpaid principal balance of the loan, and the amount of credit given pursuant to section 56 of The Banking Act of 1948, P.L. 1948, Chapter 67, as amended. * * *
The loan evidenced by this note is made pursuant to Article 12 of The Banking Act of 1948, Chapter 67, Laws of 1948, as amended and as supplemented and pursuant to the Small Business Loan Act of 1964, P.L. 1964-C 162. [5] * * * *155 Pursuant to questions raised by representatives of the Internal Revenue Service, petitioner sought clarification of his agreement with the bank with respect to interest payments on the note. Petitioner received statements from two separate bank employees concerning the loan. Both statements were dated December 9, 1975. One was addressed "To Whom It May Concern," and stated: Please be advised that Mr. Robert J. Wall obtained a Business Loan from Community Bank of Bergen County, N.J. on August 29, 1972. The annual percentage rate of interest on this loan is 10.35%. The other was addressed to petitioner and stated: The interest paid on your loan above for 1974 was $ 529.68 at $ 44.14 per month. Petitioner was sent two letters from the Brook-haven Service Center adjusting his Federal income tax liability for 1974. Subsequently, he was audited by the Patterson Office of the Internal Revenue Service. Petitioner's books were examined on December 9, 1975. This was the first and only time that petitioner was asked to produce his books or records for examination and the only time he did produce any of his records for examination. On his Federal income tax return for the *156 calendar year 1974, petitioner claimed $ 4,800 of expenses for dependent care as a miscellaneous itemized deduction. The deduction was computed on Form 2441 which was attached to the return. That form showed $ 865 a month as "Monthly amounts incurred for employment-related expenses in the household." The $ 4,800 claimed deduction for 1974 was arrived at by claiming the monthly maximum of $ 400 each month. Respondent in his notice of deficiency disallowed this claimed deduction with the following explanation: It is * * * determined that the deduction for child and dependent care services in the amount of $ 4,800 is not allowed since the expenditures did not meet the requirements of Section 214(b)(2) of the Internal Revenue Code. * * * Petitioner claimed a $ 1,580 deduction for interest on business indebtedness on Schedule C attached to his 1974 return. Respondent in his notice of deficiency disallowed part of the deduction claimed with the following explanation: It is determined that interest expense claimed in the amount of $ 1,580 on Schedule C on your return for the taxable year ended December 31, 1974 is not allowed to the extent of $ 1,050.32 since *157 it has not been established that any amount in excess of $ 529.68 was paid during the taxable year 1974. * * * OPINION Section 214[6] provides for a deduction by an employed taxpayer who maintains a household which includes a dependent child under the age of 15 as employment-related expenses of amounts paid for services in the household to enable him to be gainfully employed. The deduction is limited to $ 400 a month and further limited if the adjusted gross income of the taxpayer exceeds $ 18,000 a year. [7]
*158 Under the provisions of the regulations [8] expenses are considered as being for household services only if they are attributable in part to caring for the dependent child under 15 years old. *159 Respondent does not contend that petitioner did not "maintain a household." Nor does he contend that petitioner would not be entitled to deduct amounts paid to Miss Flagg if petitioner could establish (1) the exact amounts paid to her, (2) that her services were primarily household and child care services, and (3) that her services were required to enable him to be gainfully employed. Petitioner in 1974 was a widower with two children, David and Dylis, under 15 years of age. During the school year when petitioner's work required him to be away from home one or more nights, either traveling for his business or that of his employer he would hire Miss Flagg to stay with the twins.During the summer months when petitioner was working at his office 35 miles from home, he hired Miss Flagg to stay with the children full-time. Although he left the twins in the care of the older children after school during the school year and when he was not to be home until the evening on certain days during the summer when Miss Flagg had a day off, we hold that the costs of Miss Flagg's services were expenses which enabled petitioner to be gainfully employed. The older children were away from home *160 during the summer and the services of Miss Flagg were needed for the twins. In our view there is a difference in being willing to have a 19, 17, or 16-year old brother supervise a 13-year old boy and girl after school until the father returns from work and leaving a person of this age in charge when the father is out of town over-night. Although the record does not specifically so show, the older children undoubtedly had activities that took them away from home during the school term in the evenings or overnight at various times. In our view the payments to Miss Flagg were "employment-related expenses"; they were for household services and the care of the twins within the meaning of section 214(b)(3). Although it can be argued that the reading guidance provided by Miss Flagg was educational and not for the care of the twins, section 1.214A-1(c)(3)(i), Income Tax Regs., Miss Flagg's other duties clearly fall within the household services and qualifying individual care categories. The record establishes that the vast majority of Miss Flagg's duties were household services or qualifying individual care. We, therefore, find that the educational services, if any, supplied by Miss *161 Flagg were deminimus.Section 1.214A-1(c)(5), ex. 3, Income Tax Regs. The real problem in this case is the amounts paid by petitioner to Miss Flagg. Petitioner's computation on his return of $ 865 was his estimate of the monthly average amount he paid for such expenses as property taxes, mortgage interest, utilities, repairs, and insurance and food, as well as some portion of his payments to Miss Flagg. Petitioner testified that he thought these items were deductible from reading the Government's publication, "Your Federal Income Tax," which stated: The following items may be included as employment-related expenses: 1) Household expenses; 2) Child care expenses; 3) Disabled dependent care expenses; and 4) Disabled spouse care expenses. Petitioner at the trial recognized that his interpretation of the statement he relied on was incorrect since in the paragraph following that quoted above, "Household expenses" are defined as ordinary and usual household services. Petitioner still maintained that the explanation in the publication was confusing. At trial, petitioner stated that he did not maintain a checking account and generally paid Miss Flagg with money *162 orders. He stated that he had kept the receipts, but at the time of trial had been unable to find them and must have lost them. The burden of proof is, of course, on petitioner and though that burden is made more difficult because of petitioner's loss of records, he still must make some reasonable showing of the amounts he paid to Miss Flagg. In our view, his testimony with respect to the $ 500 a month paid in June, July, and August was sufficiently based on other facts, such as his normal custom in the summer, his recollection of the months when school vacation occurred, and his recollection of his children's activities during those months to be acceptable proof. We, therefore, conclude that petitioner is entitled to a deduction of $ 400 for each of these 3 months under section 214. The record is not as clear as to amounts paid to Miss Flagg in May and September and even less clear as to payments in other months. In our view, no showing has been made of any payment in December when petitioner was on vacation from U.S. Steel and any traveling he did would have been in connection with his consulting business. Also, the showing of the amount of traveling he did in October and *163 November for U.S. Steel when he was closing their New York Office in which he was employed is unsatisfactory. The record does show travel in the other months, but the duration of such travel is not shown. Petitioner stated that he was away in 1974 between 45 and 60 days; however, the record is unclear as to how many of these days were during the summer months when Miss Flagg was employed full-time. Also, petitioner never stated the daily amount paid to Miss Flagg when she stayed with the children because of his absence from the city. Based on her monthly pay, it might be assumed that her rate of pay was approximately $ 25 a day. Weighing heavily against petitioner because of his imprecision, we concluded that for the months of January through May and September through December, petitioner paid Miss Flagg a total of $ 800 and did not pay her in excess of $ 400 in any one of these months. We, therefore, hold that for 1974 petitioner is entitled to deduct $ 2,000 under the provisions of section 214. The second issue for decision is the amount of interest paid in 1974 on petitioner's 1972 business loan. During 1974, petitioner made 12 payments on his small business loan note *164 of $ 198.43 each making a total paid of $ 2,381.16. There is no disagreement between the parties that the loan was a small business loan and that therefore petitioner was entitled to a deduction on Schedule C for whatever portion of the $ 2,381.16 was a payment of interest on the business loan. [9] The argument between the parties is solely as to the amount of interest petitioner paid in 1974. Respondent makes no real argument with respect to the interest paid, but merely states that the burden of proof is on petitioner and since he determined an interest payment of $ 529.68 that is all petitioner should be entitled to deduct. In our view there is proof in the record to show the amount of interest paid by petitioner computed in accordance with the provisions of the note he signed. We have made a rough calculation of the amount in footnote 5 in our findings. The amount we arrived at as interest paid in 1974 is $ 668.67. Respondent's Rev. Rul. 72-100, 1972-1 C.B. 122, 123, [10] *165 in effect provides for the interest deductible by the borrower to be computed in a manner comparable to that provided for in the New Jersey Statute which was incorporated into petitioner's note. Respondent has made no argument that his Revenue Ruling is erroneous. Rather, he does not mention his Revenue Ruling in his argument. *166 In Gunderson Bros. Engineering Corp. v. Commissioner,42 T.C. 419 (1964), we held that an accrual basis taxpayer who was the recipient of monthly payments on notes which had been discontinued for interest need report only the amount of interest payments received. In so holding, we stated (at 433): We are of the opinion that in view of the applicable sections and regulations of the Internal Revenue Code of 1954 and the pertinent language contained in the Oregon statutes referred to previously, all events have not occurred at the time of sale which fix petitioner's right to the finance charges. Accordingly, payment not having been made in advance, petitioner's accruing a portion of the finance charge as each installment became due by use of the sum-of-the-digits method and deferring the remaining portion of the finance charge until the note became due, clearly reflected its income and was proper.* * * The Gunderson Bros. Engineering Corp. case, supra, was complicated because the taxpayer was on an accrual method, and to reach our conclusion we necessarily had to conclude that under the circumstances there present the taxpayer's right to the finance charges *167 did not accrue until such finance charges were paid. In the case of a cash basis taxpayer, as petitioner's return shows him to be, clearly the interest payments are deductible when paid and only when paid. The fact that the bank gave petitioner two statements, one saying that interest was at an annual rate of 10.35 percent and the other that he had paid interest of $ 44.14 a month in 1974 making a total payment of $ 529.68, apparently caused confusion in this case. However, this confusion does not deprive petitioner of his proper interest deduction. Also when the Small Business Loan Act of New Jersey, quoted in footnote 5, and respondent's Rev. Rul. 72-100, supra, are considered together, this confusion vanishes. From our computations, the total interest that petitioner paid over the 5-year period of the loan, which amounted to $ 2,648.61, was at the rate of 10.35 percent per year on the monthly unpaid balance considering each payment to first be of interest and the balance of principal. It is also obvious by mere multiplication that $ 44.14 x 60 equals $ 2,648.40, an amount which is approximately the total interest discount for the loan. Also, it is clear *168 from the agreement in the note incorporating the provisions of the Small Business Loan Act that the amount of interest paid by petitioner and received by the bank in each year is the amount of the discount which the bank would have been entitled to retain on January 1 of the year as compared to the amount it would be entitled to retain were payment accelerated on December 31 of that year. The method of computing this amount is provided for by reference in the note to the Small Business Loan Act which sets forth the formula in section 17:9A-59.35. Only a computation is required to arrive at the amount. Our computations of the total interest paid by petitioner, under our holding in Gunderson Bros. Engineering Corp. v. Commissioner,supra; under respondent'sRevenue Ruling 72-100, supra; under the formula set forth in section 17:9A-59:35; and, under the method of using an annual rate of 10.35 percent for the 12 months of 1974 on a declining balance basis with each payment first applied to interest, all result in approximately the same amount of interest paid in 1974. In our view, petitioner has demonstrated in this record that he understood that the interest *169 he was to pay was 10.35 percent per annum on the unpaid balance of his loan. However, he agreed in the note that this amount would be computed under the formula set forth in the New Jersey Small Business Loan Act. Also, a reading of the Small Business Loan Act of New Jersey explains why the interest rate was stated on the note as "varied" since under that act a higher rate may be charged on the first $ 5,500 of a loan than on the balance. Actually using the computations shown in section 17:9A-59.27 of the Small Business Loan Act of New Jersey to compute the discount, we arrived at almost the same figure for discount as is shown on the note. The very reason for such laws as the Truth in Lending Act, to which petitioner referred in his testimony, is to enable a borrower to realize, when a discount from the face of a note is taken, that the interest he is paying is higher than the 5 to 6 percent provided for in computing the discount. As petitioner testified, the bank complied with the requirement of the Truth in Lending Act and informed him that he was paying interest on the unpaid balance of his loan at the rate of 10.35 percent a year. We would be totally unable to understand *170 where the Community Bank of Bergen County obtained its figure of $ 529.68 if it were not for the reference in respondent'sRevenue Ruling 72-100, supra, to banks at their request being granted permission to report discount earned ratably over the months during which repayment is being made. The fact that respondent may chose to allow abank at its request to use such a method does not govern the amount of interest paid each year by the borrower under the terms of the note. In fact, respondent's ruling itself so states. See footnote 10, supra. While this case is conceptually simple, it has caused us some difficulty because of little help from petitioner, a pro se taxpayer, or from respondent. Petitioner deducted $ 1,580 interest on this note on his return and made no effort to show how he arrived at the amount. His whole argument was that he was entitled to deduct interest on the loan at an annual rate of 10.35 percent. Respondent neither at trial nor on brief made any effort to analyze the problem but relied entirely on his argument of burden of proof. There is no burden of proof issue here. The note incorporates the interest provisions of the New Jersey Small Business *171 Loan Act. Petitioner's interest paid in 1974 under those provisions is about $ 668.67 and we hold that he is entitled to that amount of interest deduction unless the parties prefer to make a completely accurate computation under the New Jersey Statute, in which event petitioner is entitled to deduct the exact figure so computed as interest on his business loan. It is not purely coincidental that $ 668.67 is about the same amount as is arrived at on the basis of 10.35 percent per annum on the unpaid balance of the note. Undoubtedly the 10.35 percent figure was arrived at by computing that rate to inform petitioner of the interest rate the note in truth carried with interest computed under the New Jersey Small Business Loan Act. The final issue is whether petitioner was subjected to more than one examination for 1974 within the meaning of section 7605(b).This section provides: SEC. 7605(b). Restrictions on Examination of Taxpayer.-- No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary, after investigation, *172 notifies the taxpayer in writing that an additional inspection is necessary. Petitioner concedes that there was only one examination of his books and records. Thus, it is clear that petitioner was not subjected to a second examination of his books and records as contemplated by section 7605(b). Pleasanton Gravel Co. v. Commissioner,64 T.C. 510, 527-528 (1975), affd. per curiam 578 F.2d 827 (9th Cir. 1978). Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and as effective for the year in issue.↩
2. In 1974, petitioner claimed a sec. 151(e) dependency deduction for each of his 5 youngest children. Respondent does not question his entitlement to those deductions.↩
3. The office was located 35 miles from petitioner's home.↩
4. Neither of these omissions was at issue in this case.↩
5. The Small Business Loan Act enacted in 1964, the full title of which is "An Act Concerning Loans Made by Banks to Small Business Concerns, and supplementing an Act concerning banking and banking institutions (Revision 1948) approved April 29, 1948 (P.L. 1948, c. 67). L.1964, c. 162," amended the 1948 Act referred to in the note. It is the Small Business Loan Act referred to in the note. Insofar as here pertinent, this Act provides: 17:9A-59.27 [N.J. Statutes Ann.] Schedule of finance charges (a) A bank may make and collect a finance charge on a small business loan according to the following schedule: (1) when the amount of the sum borrowed does not exceed $ 5,500.00, the finance charge shall not exceed $ 6.00 per $ 100.00 per year on the sum borrowed; (2) when the amount of the sum borrowed exceeds $ 5,500.00 but does not exceed $ 7,500.00, the finance charge shall not exceed $ 6.00 per $ 100.00 per year on the first $ 5,500.00 of the sum borrowed, plus $ 5.50 per $ 100.00 per year on the excess over $ 5,500.00; (3) when the amount of the sum borrowed exceeds $ 5,500.00 but does not exceed $ 50,000.00, the finance charge shall not exceed $ 6.00 per $ 100.00 per year on the first $ 5,500.00 of the sum borrowed, plus $ 5.50 per $ 100.00 per year on the excess over $ 5,500.00 up to $ 7,500.00 plus $ 5.00 per $ 100.00 per year on the excess over $ 7,500.00. (b) The finance charge shall be computed on the sum borrowed for the period from the making of such loan to the date scheduled for the payment of such loan in full and shall be added to the amount of the sum borrowed. L.1964, c. 162, § 3. Amended by L.1968, c. 36, § 1, eff. May 9, 1968; L.1972, c. 119, § 1, eff. Aug. 4, 1972. 17:9A-59.28 [N.J. Statutes Ann.] Note; amount; Installment payments (a) Every small business loan shall be evidenced by a note which shall be dated the day of the making of such loan. The amount of the note shall be equal to the sum borrowed, plus the amount of the finance charge. (b) Each such note shall provide that the amount thereof shall be payable in installments on dates separated by payment-periods of equal duration measured in terms of months. Any such note may provide for the omission of installments, including the first installment, during any period not exceeding 93 days in any one 12-month period. Except as herein otherwise provided, no note shall provide for payment-periods shorter than 1 month or longer than 3 months. Each such note shall provide for installment payments in equal amounts, except that the final installment may be not more than $ 1.00 more or less than any previous installment, and no such note shall provide that the final installment shall be payable more than 5 years and 1 month from the date of such note. L.1964, c. 162, § 4. * * *
17:9A-59.32 [N.J. Statutes Ann.] Acceleration of maturity (a) The note evidencing a small business loan may provide that (1) upon default in the payment of any installment on its due date, the entire unpaid balance owing thereon shall, at the election of the bank, become immediately due and payable; (2) when the maturity of the unpaid balance owing on a note is accelerated as provided by this section, the bank may charge interest at the legal rate from the date such acceleration takes place upon the difference between the amount of the unpaid principal balance thereof, and the amount of credit given pursuant to section 11; [Footnote omitted.] * * *
(b) For the purposes of this section, (1) "unpaid principal balance" owing on a note means the face amount of the note, less the aggregate of all installments paid thereon and less the amount, if any, received by the bank on the cancellation of credit life insurance paid for by the borrower or the cost of which was retained by the bank out of the proceeds of the loan evidenced by the note, plus the cost of any insurance paid for by the bank pursuant to paragraph (C) of section 6 of this act, [footnote omitted] after crediting against such cost the amount of the return premium, if any, received by the bank on cancellation of prior insurance paid for by the borrower or the cost of which was retained out of the proceeds of the loan evidenced by the note; * * *
17:9A-59.35 [N.J. Statutes Ann.] Credit on finance charge in event of prepayment or acceleration of maturity; formula (a) When the unpaid balance owing on a small business loan is repaid in full, or when the maturity of the unpaid balance of such loan is accelerated before the date scheduled for the payment of the final installment, the bank shall allow a credit on account of the finance charge made on such loan, the amount of which shall not be less than the amount determined by the application of the formula C = AN / D in which "C" represents the amount of the credit to be given; "A" represents the amount of the finance charge; "D" is determined by ascribing to each month included in the period for which the finance charge was computed, reckoning from the day upon which the loan was made, the cardinal number descriptive of the number of months scheduled, by the terms of the loan, to elapse from the beginning of each such month, to the date to which the finance charge was computed, and the total of all the cardinal numbers so ascribed constitutes the quantity "D"; and "N" represents the difference between the quantity "D" and the total of all the cardinal numbers ascribed to the months which have elapsed, in whole or in part, from the making of the loan, to the day upon which such repayment is made, or to the day upon which the maturity of the unpaid balance of such loan is accelerated, as the case may be. (b) The Commissioner of Banking and Insu-ance may prepare and distribute to such banks as shall make a request therefor, a schedule or schedules based upon the formula stated in subsection a of this section, and credits allowed as provided in such schedule shall constitute a complete compliance with such subsection. A copy of such schedule, duly certified by the commissioner, shall be evidence in all courts and places. (c) This section shall not apply where the amount of the credit to be allowed is less than $ 5.00. L.1964, c. 162, § 11. As we understand the formula in sec. 17:9A-59.35 [N.J. Statutes Ann.], the interest unpaid as of January 1, 1974, would be about $ 1,432.86 computed as follows: C = 2,648.63 X 990 / 1,830 = 1,432.86 and the interest unpaid as of December 31, 1974, would be about $ 764.19 computed as follows: C = 2,648.60 X 528 / 1,830 = 764.19 Thus under this formula, the amount of interest paid in 1974 is about $ 668.67 computed as follows: 1,432.86 - 764.19 = $ 668.67 Our computations are not carried out beyond two decimal points and make no adjustment for any return of life insurance premium or for interest due from the 2 weeks prior to September 15, 1972.↩
6. SEC. 214. EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT. (a) Allowance of Deduction.--In the case of an individual who maintains a household which includes as a member one or more qualifying individuals (as defined in subsection (b)(1)), there shall be allowed as a deduction the employment-related expenses (as defined in subsection (b)(2)) paid by him during the taxable year. (b) Definitions, Etc.--For purposes of this section-- (1) Qualifying Individual.--The term "qualifying individual" means-- (A) a dependent of the taxpayer who is under the age of 15 and with respect to whom the taxpayer is entitled to a deduction under section 151(e), * * *
(2) Employment-Related Expenses.--The term "employment-related expenses" means amounts paid for the following expenses, but only if such expenses are incurred to enable the taxpayer to be gainfully employed: (A) expenses for household services, and (B) expenses for the care of a qualifying individual. (3) Maintaining a Household.--An individual shall be treated as maintaining a household for any period only if over half of the cost of maintaining the household during such period is furnished by such individual * * *. (c) Limitations on Amounts Deductible.-- (1) In General.--A deduction shall be allowed under subsection (a) for employment-related expenses incurred during any month only to the extent such expenses do not exceed $ 400. (2) Expenses Must be for Services in the Household.-- (A) In General.--Except as provided in sub-paragraph (B), a deduction shall be allowed under subsection (a) for employment-related expenses only if they are incurred for services in the taxpayer's household. * * *
(d) Income Limitation.--If the adjusted gross income of the taxpayer exceeds $ 18,000 for the taxable year during which the expenses are incurred, the amount of the employment-related expenses incurred during any month of such year which may be taken into account under this section shall (after the application of subsections (e)(5) and (c)) be further reduced by that portion of one-half of the excess of the adjusted gross income over $ 18,000 which is properly allocable to such month.For purposes of the preceding sentence, if the taxpayer is married during any period of the taxable year, there shall be taken into account the combined adjusted gross income of the taxpayer and his spouse for such period. ↩
7. Because petitioner's salary from U.S. Steel in 1974 is reduced by a loss from his self-employment, even after the adjustments in the notice of deficiency, respondent does not contend that the $ 18,000 limitation is applicable to petitioner.↩
8. Sec. 1.214A-1(c)(2) [Income Tax Regs.] provides: (2) Household services. Expenses will be considered to be paid for household services if they are paid for the performance in and about the taxpayer's home of ordinary and usual services necessary to the maintenance of the household.However, expenses will not be considered as paid for household services unless the expenses are attributable in part to the care of the qualifying individual. Thus, amounts paid for the services of a domestic maid or cook will be considered to be expenses paid for household services if a part of those services is provided to the qualifying individual. Amounts paid for the services of an individual who is employed as a chauffeur, bartender, or gardener, however, will not be considered to be expenses paid for household services. And, sec. 1.214A-1(c)(3)(i) [Income Tax Regs.] provides: (3) Care of qualifying individual--(i) In general.↩ The primary purpose of expenses for the care of a qualifying individual must be to assure that individual's well-being and protection. Not all benefits bestowed upon such an individual will be considered as provided for his care. Accordingly, amounts paid to provide food, clothing, or education are not expenses paid for the care of a qualifying individual.However, where the manner of providing care is such that the expense which is incurred includes expense for other benefits which are inseparably a part of the care, the full amount of the expense will be considered to be incurred for care. Thus, for example, the full amount paid to a nursery school in which a qualifying child is enrolled will be considered to be for the care of the child, even though the school also furnishes lunch, recreational activities, and other benefits.Educational expenses incurred for a child in the first or higher grade level are not expenses incurred for the care of one or more qualifying individuals. Expenses incurred for transportation of a qualifying individual described in paragraph (b)(1)(i) of this section between the taxpayer's household and a place outside the taxpayer's household where services for the care of such qualifying individual are provided will not be considered to be incurred for the care of such qualifying individual.
9. Although both parties accept the payment as business interest, since petitioner itemized deductions, the amount of interest paid would be deductible under sec. 163(a) if it were not deductible on Schedule C.↩
10. Insofar as here pertinent, this Revenue Ruling provides as follows: Situation (2). N is engaged in the general commercial banking business, computes its taxable income under the cash receipts and disbursements method of accounting and uses a calendar year accounting period. In the course of its business N, on November 30, 1970, made an installment loan of $ 2,990 to B, a cash method, calendar year individual. In consideration therefor, B executed a note to N in the amount of $ 3,600, payable in 60 monthly installments of $ 60 beginning on December 31, 1970, and thereafter on the last day of each month until November 30, 1975. B paid N $ 60 on December 31, 1970. The installment notes executed by A and B each provide that, if the loan is repaid in full before maturity, the portion of the total interest of $ 39 on A's note and $ 610 on B's note earned by the lender is to be computed on a sum-of-the months digits method, hereinafter referred to as the Rule of 78's. In Situations (1) and (2), there are no other provisions relating to the accrual or payment of interest. * * *
With respect to cash method lenders, section 1.446-1(c)(1)(i) of the regulations provides in part that: "* * * all items which constitute gross income * * * are to be included for the taxable year in which actually or constructively received." See also section 1.451-1(a) of the regulations. With respect to cash method borrowers, section 1.461-1(a)(1) of the regulations provides, in part, that: "* * * amounts representing allowable deductions shall, as a general rule, be taken into account for the taxable year in which paid." Revenue Ruling 70-647, C.B. 1970-2, 38, holds that the general rule relating to the treatment of payments on an indebtedness requires that partial payments in satisfaction of an indebtedness be applied toward the reduction of interest then toward principal, but that this rule does not apply when it can be inferred from the circumstances that the parties understood that a different allocation of the payments would be made. In Situation (2) there are no circumstances indicating that the parties did not intend the general rule to apply. Therefore, the first payment of $ 60 made by B on December 31 should be considered a payment of the $ 20 of accrued interest and the balance of $ 40 will be considered to have been applied to the repayment of principal. Accordingly, N should include in its gross income for the calendar year 1970 interest of $ 20 with respect to the loan and B will be considered to have paid interest of $ 20 for such calendar year for purposes of the deduction allowed by section 163 of the Code. This ruling provides pursuant to section 7805(b) that under certain circumstances a bank or similar taxpayer will not be required to change its accounting method where, under a prior ruling, that taxpayer had been permitted by the Commissioner to adopt an accounting method of apportioning interest income on a straight-line basis. Following this discussion, the Revenue Ruling states at page 124: The right of the borrower to compute his interest deduction on a loan under the Rule of 78's method is not affected by the lender's use of a different method in reporting interest income on the loan.↩