BRUCE A. PRABEL AND MARIANNE S. PRABEL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8389-87.          Filed December 29, 1988.

*John A. Craig* and *Robert D. Whoriskey,* for the petitioners.[1]

*Alan E. Cobb,* for the respondent.

## OPINION

SWIFT, *Judge:* This matter is before the Court on the parties' cross-motions for summary judgment filed under Rule 121.[2] Each party objects to the other party's motion on the merits. Petitioners further object to respondent's motion for summary judgment on the ground that there remain unresolved material issues of fact that would have to be decided before respondent's motion for summary judgment can be granted.

The cross-motions for summary judgment raise the following primary issues: (1) Whether a partnership's use of the Rule-of-78's method of accruing interest deductions relating to a long-term real estate loan does not clearly reflect income; and (2) whether respondent may exercise his authority under section 446(b) to change the partnership's method of accruing interest on the loan.

---

[1] Briefs amici curiae were filed by Walter J. Rockler and K. Peter Schmidt as attorneys for NPA Project and by John S. Nolan and Frederick H. Robinson as attorneys for Commercial Properties Group, Inc.

[2] All Rule references are to the Tax Court Rules of Practice and Procedure, and unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

## Background

This is a test case concerning the use of the Rule-of-78's method of accruing interest deductions for tax purposes. Petitioners believe that this method is permissible under the all-events test of section 461. Respondent believes that such method, when applied to long-term loans, results in a material distortion of income and that he has authority under section 446 to require the use of the economic-accrual method of accruing interest deductions relating to such loans. The factual matter set forth in this case is based on undisputed facts and exhibits submitted to us in support of the parties' cross-motions for summary judgment.

Petitioners Bruce A. Prabel and Marianne S. Prabel are individuals who resided in Chadds Ford, Pennsylvania, at the time they filed their petition. Petitioners are cash basis taxpayers who report their income for tax purposes on a calendar year basis. They filed their Federal income tax returns for 1980, 1981, and 1982 with respondent at Philadelphia, Pennsylvania. Marianne S. Prabel is a party to this action by virtue of having filed joint returns for the years at issue. References to "petitioner" in the singular are to Bruce A. Prabel.

In late 1980, a partnership named Quincy Associates, Ltd. (Quincy Associates), purchased a shopping center from First Delaware Equity Corp. (FDEC) for $2,471,000. The shopping center was located in Quincy, Florida. The purchase price for the shopping center was payable by a cash downpayment of $192,000 and the balance of $2,279,000 by a nonrecourse, 23-year, 2-month purchase-money note (hereinafter referred to as the note or the 23-year note). The note was issued in the total amount of $7,268,249, reflecting the $2,279,000 deferred purchase price and $4,989,249 of stated, precomputed interest. The note matures on December 31, 2003, and is secured by a mortgage and security agreement issued by Quincy Associates.

The terms of the transaction and of the related note were the result of dealings between related entities and were not the result of arm's-length negotiations.

Under the terms of the note, in November and December of 1980, and during the following 23 years, Quincy Associates is obligated to make monthly payments to FDEC of

principal and interest in the amount of $17,166.67. In 1980, 1981, 1982, and 1983, additional lump-sum payments also were due. The total payments each year (including the lump-sum payments due in years 1980, 1981, 1982, and 1983) that Quincy Associates is obligated to make are as follows:

| Year | Total payments due each year |
|------|-----------------------------:|
| 1980 | $133,000 |
| 1981 | 385,000 |
| 1982 | 379,000 |
| 1983 | 362,000 |
| 1984 through 2003 | 206,000 |
| Cumulative total | 5,379,000 |

On maturity of the note in the year 2003, an additional balloon payment of $1,889,249 is due in order to pay off the principal balance of the note. The balloon payment represents only principal because, under Quincy Associates' method of allocating the annual cash payments due between principal and interest, only $389,751 of the total cash payments due over the term of the note are to be allocated to principal, leaving in year 2003 a principal balance outstanding of $1,889,249.

Pursuant to the terms of the note, Quincy Associates had the right, at its discretion, to prepay in whole or in part the outstanding principal of the note. In the event of a full or partial prepayment, Quincy was required to pay all unpaid and accrued interest thereon. The note further provided that in the event of prepayment—

Partial prepayments will be allocated first to the Interest Element and then to the Principal Element in accordance with the "Rule of 78." On prepayment of this note in whole, the mortgagor will receive a credit for the unearned portion of the Interest Element determined in accordance with the "Rule of 78".

The Rule of 78's (also referred to as "sum of the years digits") is a method of allocating payments due on loans between principal and interest. It originated in the 1930's as a simplified method, in the absence of computers, of computing rebates on consumer installment loans where the

loans were prepaid. Under the Rule of 78's, each separate installment period relating to a loan has associated with it an arithmetic fraction, which fraction (if repayment of the loan occurs in that period) is applied to the total precomputed interest due over the term of the loan. The product of that calculation is regarded as the portion of the total precomputed interest that was earned from origination of the loan until the time of prepayment. The balance of the total precomputed interest is credited or rebated to the debtor's account. Scott, "Answering questions about the 'Rule of 78ths,'" 68 Banking 124 (Sept. 1976), contains a concise explanation of the history of the Rule of 78's.

The computation required under the Rule of 78's has been explained simply as follows:

The rule of 78's is based on the idea of a 12-month loan repayable in equal installments. If the borrower takes out a $1200 loan, he has the use of 12 $100 bills the first month, 11 $100 bills the second month, 10 the third month, and only one the last month. During the full 12 months, he therefore has the use of 78 $100 bills (12 plus 11 plus 10 * * * plus 1). The number 78 becomes the denominator of the fraction, while the numerator depends upon when the prepayment takes place. If prepayment is made at the 7th installment, 57/78 of the total finance charge [is regarded as having] been earned by the creditor (the numerator is the sum of 12, 11, 10, 9, 8, and 7). * * * this would amount to 57/78 of $211.68 [the total interest due on the loan], or approximately $155. Therefore, [the debtor's] rebate due on August 1 would be approximately $57. [1 J. Fonseca, Handling Consumer Credit Cases, sec. 3:7, at 101 (3d ed. 1986). Fn. ref. omitted.]

Where the loan has more than 12 payment periods, the denominator under the Rule of 78's is different but the basic calculation is the same. The sum of the digits of the total number of payment periods for the loan is used as the denominator, and the sum of the digits of the particular month in which prepayment occurs is the numerator (e.g., prepayment at the end of the second month of a 24-month installment loan will result in the use of the fraction 47 divided by 300 for computing interest due on prepayment of the loan).

For financial accounting purposes, payments due each month on the note are allocated between principal and

interest under the Rule of 78's. Because payments due in most of the first 13 years of the note are significantly less than the interest accruals in those years under the Rule of 78's, the actual payments due each month from Quincy Associates are allocated almost exclusively to interest. In 1981 through 1992 (see chart, *infra,* p. 1108), the payments due will not be sufficient to cover the amount of interest calculated under the Rule of 78's and negative amortization will occur (i.e., interest calculated each month under the Rule of 78's, but not due, is carried over to subsequent years). Under the terms of the note, no further interest accrues on the unpaid interest that creates the negative amortization (i.e., no compounding of interest occurs).

For Federal income tax purposes, Quincy Associates reports its income on the accrual method of accounting, but the amount of interest relating to the note that is accrued each year is not limited to the amount of the payments due each year. Instead, for tax purposes, interest is accrued by Quincy Associates with respect to the note solely on the basis of the Rule-of-78's method as if Quincy Associates had the liability each year to pay FDEC the full amount of interest calculated under the Rule of 78's. We emphasize that the amount of interest accrued under this method, for tax purposes, is not limited to the amount of the payments that are due each year.

Assuming no prepayment of the note occurs, Quincy Associates' method of accruing interest deductions with respect to the note for tax purposes will not result in any more interest deductions being claimed by Quincy Associates over the total life of the loan than would be accrued if Quincy Associates used either a ratable, straight-line method or an economic-accrual method to accrue the total interest due over the full term of the loan.[3] Quincy Associates' use, however, of the Rule-of-78's method to accrue interest results in the accrual in the early years of the note of significantly higher interest deductions for Quincy Associates than would be available under either the ratable or economic-accrual methods of accruing interest, and it results in interest deductions in those years signifi-

---

[3] An explanation of the economic-accrual method of computing interest is set forth, *infra.*

cantly higher than Quincy Associates' total annual payment obligations on the note.

Because of the significant differences in the accrued interest deductions during the early years (i.e., the first 13 years) of the note under the different methods of accruing interest, respondent determined that the Rule-of-78's accrual method used by Quincy Associates for tax purposes did not clearly reflect Quincy Associates' taxable income. Respondent disallowed the accrued interest deductions claimed by Quincy Associates and changed Quincy Associates' accrual method for interest deductions to the economic-accrual method.

The economic-accrual method of accruing interest (also referred to as the actuarial method) is based on a calculation of the true or effective uniform annual interest rate relating to a loan. The calculation under this method has been explained by respondent as follows:

The effective rate of interest is a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of values received to the amount and timing of payments made, and is thus a reflection of the cost of the amount borrowed for the time it is actually available. * * * Therefore, the effective rate of interest, which is a uniform rate over the term of the loan and is based on the amount of the loan and the repayment schedule provided in the loan agreement, when applied to the unpaid balance of the indebtedness for a given period, will produce the true cost of that indebtedness for that period. That cost is referred to as the economic accrual of interest for that period. [Rev. Rul. 83-84, 1983-1 C.B. 97, 98. Citations omitted.]

Set forth below in schedule format for each year of the 23-year, 2-month note of Quincy Associates are the following: (1) Interest deductions that would be accrued by Quincy Associates under the Rule-of-78's accrual method; (2) the portion of the total payments due each year on the note that would be treated as interest under Quincy Associates' Rule-of-78's allocation of the payments due between principal and interest; (3) interest deductions that would accrue each year under a ratable or straight-line accrual of the total interest due on the note; (4) interest deductions that would accrue each year under the economic-accrual method; and (5) the yearly differences between the accrued interest deductions using the Rule-of-78's method and the economic-accrual method:

| Year | Rule-of-78's accrual | Portion of annual payments allocated to interest under Rule of 78's[1] | Ratable accrual of interest | Economic accrual of interest | Difference between Rule-of-78's accrual and economic accrual of interest |
|---|---|---|---|---|---|
| 1980 | $71,402 | $71,402 | $35,893 | $43,964 | $27,438 |
| 1981 | 417,604 | 385,000 | 215,363 | 249,847 | 167,757 |
| 1982 | 399,078 | 379,000 | 215,363 | 233,415 | 165,663 |
| 1983 | 380,552 | 362,000 | 215,363 | 216,349 | 164,203 |
| 1984 | 362,026 | 206,000 | 215,363 | 207,659 | 154,367 |
| 1985 | 343,500 | 206,000 | 215,363 | [2]207,866 | 135,634 |
| 1986 | 324,976 | 206,000 | 215,363 | 208,098 | 116,878 |
| 1987 | 306,448 | 206,000 | 215,363 | 208,358 | 98,090 |
| 1988 | 287,924 | 206,000 | 215,363 | 208,651 | 79,273 |
| 1989 | 269,396 | 206,000 | 215,363 | 208,981 | 60,415 |
| 1990 | 250,872 | 206,000 | 215,363 | 209,351 | 41,521 |
| 1991 | 232,345 | 206,000 | 215,363 | 209,768 | 22,577 |
| 1992 | 213,820 | 206,000 | 215,363 | 210,236 | 3,584 |
| 1993 | 195,293 | 206,000 | 215,363 | 210,763 | (15,470) |
| 1994 | 176,768 | 206,000 | 215,363 | 211,354 | (34,586) |
| 1995 | 158,241 | 206,000 | 215,363 | 212,020 | (53,779) |
| 1996 | 139,716 | 206,000 | 215,363 | 212,768 | (73,052) |
| 1997 | 121,190 | 206,000 | 215,363 | 213,609 | (92,419) |
| 1998 | 102,664 | 206,000 | 215,363 | 214,555 | (111,891) |
| 1999 | 84,139 | 206,000 | 215,363 | 215,618 | (131,479) |
| 2000 | 65,612 | 206,000 | 215,363 | 216,813 | (151,201) |
| 2001 | 47,087 | 206,000 | 215,363 | 218,156 | (171,069) |
| 2002 | 28,560 | 73,811 | 215,363 | 219,667 | (191,107) |
| 2003 | 10,036 | 10,036 | 215,363 | 221,366 | (211,330) |
| Total | 4,989,249 | 4,989,249 | [3]4,989,249 | [3]4,989,249 | 0 |

[1]It will be noted that the amounts set forth in this column (with the exception of the amounts for the years 1980, 2002, and 2003) constitute the total payments due each year on the note. As is evident, by comparing the figures in the second column with those in the third column, during the early years of the note (namely, excluding 1980 but including 1981 through 1992) the Rule-of-78's accrual of interest on the note exceeds the total payments due each year. The total payments due therefore in 1981 through 1992 are allocated solely to interest, and the excess interest accruals result in negative amortization of accrued interest that is charged to the payments due in the 11 subsequent years. Thus, even though the Rule-of-78's accrual of interest in years 1993 through 2003 is less than the payments due, in years 1993 through 2001 the entire payments due still are to be allocated or credited to the negatively amortized interest from the earlier years.

[2]In years 1985 through 2003, interest accruals under the economic-accrual method increase from year to year due to the negative amortization of interest that also occurs under this method.

[3]Amounts less than a dollar have been dropped. Accordingly, arithmetic addition of the figures set forth in these columns will not exactly equal the totals for the columns.

Quincy Associates has made no prepayments on the note which would trigger Quincy Associates' liability to pay, in the year of prepayment, interest computed under the Rule-of-78's method of computing interest. Quincy Associates did not seek a ruling from respondent regarding the use of the Rule-of-78's method of calculating accrued interest deductions relating to the note.

During calendar years 1980, 1981, and 1982, Quincy Associates made the required note payments of $133,000, $385,000, and $379,000.

On October 20, 1980, petitioner Bruce A. Prabel became a limited partner in Quincy Associates, acquiring a 3.7485 percentage interest in the partnership's profits and capital.[4] The private placement memorandum soliciting investments in Quincy Associates contained the following statement concerning the risks associated with the partnership's use of the Rule-of-78's method of accruing interest for tax purposes:

*1. Tax Risks*

       \*     \*     \*     \*     \*     \*     \*

(c) *Deductibility of Interest.* The Partnership intends to accrue and deduct interest payable under the Wraparound Mortgage pursuant to the Rule of 78's method which is a method of computing the interest element of each payment of an installment loan. The application of the Rule of 78's method results in a far greater proportion of debt service in the early years being treated as deductible interest rather than non-deductible principal. It is the opinion of counsel that the Partnership may deduct interest on the Wraparound Mortgage pursuant to the Rule of 78's method. However, the law in this area is not clearly developed. Accordingly, there can be no assurance that IRS will not contend that the use of the Rule of 78's method by the Partnership does not clearly reflect its income, in which event a substantial portion of the Partnership's interest deductions in the early years would be disallowed, and deferred to later years.

Quincy Associates' private placement memorandum, under the heading FEDERAL TAX CONSEQUENCES, contains the following caution concerning the use of the Rule-of-78's method:

*Deductions Taken by the Partnership*

       \*     \*     \*     \*     \*     \*     \*

(a) *Interest Deductions.* \* \* \*

Although counsel will render their opinion that the Partnership may utilize the Rule of 78's method, it should be noted that there is no authority specifically approving the use of such method in a transaction similar to this case. It is possible that because such method will result in increasing the Partnership's interest deductions in the early years of its operation of the Project, and a decrease in interest deductions in later

---

[4]The purchase price for petitioner's interest was $57,500, payable $2,300 down, with the balance due over the subsequent 5 years.

years, the IRS may determine that it does not "clearly reflect" the Partnership's income under Code Section 446. If the IRS were to take such a position and prevail, a portion of the Partnership's interest expense in the early years would not be currently deductible, but would be deferred to later years.

Also included in the private placement memorandum is a 13-page attorney-opinion letter. The opinion letter, in relevant part, discusses the Federal tax ramifications of investing in Quincy Associates as follows:

> It should be noted, however, that there is no authority specifically approving the use of the Rule of 78's method in a transaction similar to this case, although the IRS has indicated that such method could apply to a loan incurred to finance the construction of an apartment building. Rev. Rul. 74-395, [1974-2 C.B. 46]. Further, none of the above authorities applied the use of the Rule of 78's method to a loan providing for uneven debt service payments, although there does not appear to be any prohibition on the use of such method in such a case. It is possible that because the Rule of 78's method will result in increasing the Partnership's interest deductions in the early years of its operation of the Project, and a decrease in interest deductions in later years, the IRS may determine that it does not "clearly reflect" the Partnership's income under Code Section 446. If the IRS were to take such a position and prevail, a portion of the Partnership's interest expense in the early years would not be currently deductible, but would be deferred to later years.
> We note that the IRS National Office has, in two Technical Advice Memoranda, taken the position that the use of the accrual method by two real estate partnerships did not clearly reflect income, and the partnerships were therefore required to use the cash method. (I.R.S. Private Letter Rulings 8017007 and 8017008, issued December 31, 1979). Although neither Technical Advice Memorandum cites any authority for its conclusion, they indicate the possibility of an IRS challenge to the Partnership's accrual of interest under the Rule of 78's method. Accordingly, there can be no assurance that the Partnership's proposed deductions for interest will be sustained on audit.

Respondent, on June 6, 1983, issued Revenue Ruling 83-84, 1983-1 C.B. 97. Respondent therein ruled that even though a loan agreement provides that interest shall be accrued under the Rule of 78's, no deductions for interest will be allowed for any year in excess of the economic accrual of interest. Respondent based this ruling on his authority under section 446(b) to change a taxpayer's method of accounting, where the taxpayer's method does not clearly reflect income, to a method which, in respondent's opinion, does clearly reflect income.

During the course of his audit examination of Quincy Associates, respondent received from FDEC computer-generated tables of interest accruals on Quincy Associates' note under both the Rule-of-78's method and the economic-accrual method. The tables indicate that the economic or effective interest rate on the note was 11.76996 percent.

Respondent adjusted Quincy Associates' method of accruing the $4,989,249 in total interest due on the 23-year note. Respondent's adjustment was based upon the difference, for the years at issue, between Quincy Associates' interest accrual under the Rule-of-78's method and accrual of the interest under the economic-accrual method. Respondent determined the differences between the two methods for the years 1980, 1981, and 1982 as follows:

| Year | Rule-of-78's accrual | Economic accrual | Difference |
|---|---|---|---|
| 1980 | $71,402 | $43,964 | $27,438 |
| 1981 | 417,604 | 249,847 | 167,757 |
| 1982 | 399,078 | 233,415 | 165,663 |

Respondent determined tax deficiencies in petitioner's Federal income tax liabilities only for 1981 and 1982 because the change in Quincy Associates' method of accounting was made for 1981. Quincy Associates' alleged excessive interest accrual determined by respondent for 1980 was adjusted by way of a section 481 adjustment reflected in deficiencies issued with respect to 1981.

Quincy Associates reported taxable losses for 1981 and 1982, and its taxable losses as adjusted by respondent were as follows:

| Year | Losses under Rule of 78's | Losses under economic accrual |
|---|---|---|
| 1981 | ($462,069) | ($294,313) |
| 1982 | (409,227) | (243,565) |

## DISCUSSION

*Section 446(b)—Clear Reflection of Income*

Under section 446(b),[5] respondent has "broad powers of determining whether accounting methods used by a tax-

---

[5]Sec. 446(a) and (b) provide as follows:

(a) GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

payer clearly reflect income." *Commissioner v. Hansen,* 360 U.S. 446, 467 (1959). Respondent's authority under section 446(b) reaches not only overall methods of accounting, but also a taxpayer's method of accounting for specific items of income and expense. Sec. 1.446-1(a), Income Tax Regs.; *Keller v. Commissioner,* 725 F.2d 1173, 1179 (8th Cir. 1984), affg. 79 T.C. 7 (1982); *Burck v. Commissioner,* 533 F.2d 768, 773 (2d Cir. 1976), affg. 63 T.C. 556 (1975); *Grynberg v. Commissioner,* 83 T.C. 255, 267 (1984).

This Court cannot interfere with respondent's audit adjustments under section 446(b) unless the adjustments are "clearly unlawful," or "plainly arbitrary." *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 532-533 (1979). Our task in evaluating changes in methods of accounting under section 446(b) is to determine whether respondent abused his discretion in changing the taxpayer's method of accounting. *RCA Corp. v. United States,* 664 F.2d 881, 886 (2d Cir. 1981), cert. denied 457 U.S. 1133 (1982). The taxpayer has a heavy burden of establishing that respondent did, in fact, abuse his discretion. *American Fletcher Corp. v. United States,* 832 F.2d 436, 438 (7th Cir. 1987); *Record Wide Distributors, Inc. v. Commissioner,* 682 F.2d 204, 206 (8th Cir. 1982), affg. a Memorandum Opinion of this Court. Respondent is not required to show bad faith on the part of the taxpayer before requiring a change in method of accounting. *Commissioner v. Seagram & Sons, Inc.,* 394 F.2d 738, 743 (2d Cir. 1968), revg. on other grounds 46 T.C. 698 (1966).

Where a taxpayer's method of accounting is clearly an acceptable method, respondent will not be allowed to require a change. *Bay State Gas Co. v. Commissioner,* 75 T.C. 410, 423 (1980), affd. 689 F.2d 1, 7 (1st Cir. 1982); *Peninsula Steel Products & Equip. v. Commissioner,* 78 T.C. 1029, 1045 (1982); *Auburn Packing Co. v. Commissioner,* 60 T.C. 794, 798 (1973). Nor will the courts approve respondent's change of a taxpayer's accounting method from an incorrect method to another incorrect method. *Harden v. Commis-*

(b) EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

*sioner*, 223 F.2d 418, 421 (10th Cir. 1955), revg. 21 T.C. 781 (1954).

Respondent's use of his discretion under section 446(b) to require a change in a method of accounting for interest deductions often has been affirmed. See, e.g., *Planet Line, Inc. v. Commissioner*, 89 F.2d 16, 17 (2d Cir. 1937), affg. 34 B.T.A. 253 (1936) (change required in accrual method); *Cole v. Commissioner*, 64 T.C. 1091, 1106 (1975), affd. 586 F.2d 747 (9th Cir. 1978), cert. denied 441 U.S. 924 (1979) (change required from cash method to accrual method); *Sandor v. Commissioner*, 62 T.C. 469, 479 (1974), affd. 536 F.2d 874 (9th Cir. 1976) (change required from cash method to accrual method); *James Brothers Coal Co. v. Commissioner*, 41 T.C. 917, 924 (1964) (change required in accrual method).

Section 163(a) allows as a deduction from gross income "all interest paid or accrued within the taxable year on indebtedness." The pertinent Treasury regulations provide that, in general, interest paid or accrued within the taxable year on indebtedness shall be allowed as a deduction in computing taxable income. Sec. 1.163-1(a), Income Tax Regs.

Under the cash receipts and disbursements method of accounting, amounts representing interest "shall, as a general rule, be taken into account for the taxable year in which paid." Sec. 1.461-1(a)(1), Income Tax Regs. Under the accrual method of accounting, interest is deductible "for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy." Sec. 1.461-1(a)(2), Income Tax Regs. See sec. 1.446-1(c)(1)(ii), Income Tax Regs.; *Lay v. Commissioner*, 69 T.C. 421, 434 (1977); see also *United States v. General Dynamics Corp.*, 481 U.S. 239 (1987).

Historically, the courts and respondent generally have deferred to the loan agreements between debtors and creditors where the agreements make specific provision for the accrual or allocation of loan payments between principal and interest—at least where the allocations are made pursuant to bona fide and arm's-length agreements. *Bayou Verret Land Co. v. Commissioner*, 52 T.C. 971, 985-986

(1969), affd. in part and revd. in part on other grounds 450 F.2d 850 (5th Cir. 1971); Rev. Rul. 63-57, 1963-1 C.B. 103.

Notwithstanding, however, agreements between the parties to the loan, the timing of interest deductions is subject to the requirement that the method of accounting for such deductions clearly reflects income. In *Sandor v. Commissioner,* 62 T.C. 469 (1974), affd. 536 F.2d 874 (9th Cir. 1976), the taxpayer obtained a $100,000 loan payable on demand with interest payable at 7½ percent annually. If no earlier demand for repayment was made, the loan was due in 5 years. As provided in the loan agreement, the cash basis taxpayer prepaid in 1968, the year the loan was entered into, the total interest due over the entire 5-year term of the loan, and he deducted the entire prepaid interest in the first year. Exercising his authority to change methods of accounting to methods which clearly reflect income, respondent disallowed most of the claimed deduction (that portion relating to the term of the loan subsequent to the year of prepayment). The disallowed interest was required to be allocated to the taxable periods to which it related. We approved respondent's actions in *Sandor,* and we reached similar results in *Resnik v. Commissioner,* 66 T.C. 74 (1976), affd. 555 F.2d 634 (7th Cir. 1977); *Cole v. Commissioner,* 64 T.C. 1091 (1975), affd. 586 F.2d 747 (9th Cir. 1978); *Burck v. Commissioner,* 63 T.C. 556 (1975), affd. 533 F.2d 768, 773 (2d Cir. 1976). See also *Ferrill v. Commissioner,* 684 F.2d 261 (3d Cir. 1982), affg. a Memorandum Opinion of this Court; *Anderson v. Commissioner,* 568 F.2d 386 (5th Cir. 1978), affg. a Memorandum Opinion of this Court.

In *Sandor v. Commissioner, supra,* we explained further that under section 461, deductions are to be "taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income." We pointed out that an earlier version of section 461, section 200(d) of the Revenue Act of 1924, 43 Stat. 253, 254, had provided—

(d) * * * The deductions and credits provided for in this title shall be taken for the taxable year in which "paid or accrued" or "paid or incurred", dependent upon the method of accounting upon the basis of which the net income is computed under section 212 or 232, *unless in order to clearly reflect the income* the deductions or credits should be

taken as of a different period. [*Sandor v. Commissioner, supra* at 478. Emphasis added.]

We concluded in *Sandor* that section 461(a) continued to require that the method of accounting used by a taxpayer must clearly reflect income, even though successor versions of section 461(a) do not contain that language. In *Sandor v. Commissioner*, 62 T.C. at 478, we noted that the legislative history under section 461 states that—

The timing of deductions and credits otherwise allowable is determined by the taxpayer's method of accounting. *The method must clearly reflect the income of the taxpayer.* [H. Rept. 1337, 83d Cong., 2d Sess. A161 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 305 (1954). Emphasis added.]

In *Saller v. United States,* an unreported case (E.D. Tex. 1988, 62 AFTR 2d 88-5050, 88-2 USTC par. 9416), a taxpayer's accrual of interest under the Rule of 78's as applied to a long-term loan was disallowed because it did not clearly reflect income.

In recent years, the timing and amount of interest deductions have been subject to several legislative restrictions none of which are applicable to the years before us. See, for example, sec. 461(g), added by sec. 208(a) of the Tax Reform Act of 1976, 90 Stat. 1520, 1541 (requiring cash basis taxpayers to treat prepaid interest as deductible only in the period to which the interest is allocable); sec. 163(e), as amended by sec. 42(a)(3) of the Deficit Reduction Act of 1984, 98 Stat. 494, 556 (restricting interest deductions with respect to original issue discount to amounts actuarially computed); sec. 461(h), as added by sec. 91(a) of the Deficit Reduction Act of 1984, 98 Stat. 494, 598 (requiring computations of accrued interest deductions under the actuarial or economic-accrual method).

Section 461(h), as enacted in 1984, was made prospective only (i.e., applicable only to the accrual of interest on loans entered into after June 8, 1984). The legislative history of section 461(h) expressly explains that Congress (in generally requiring economic accrual of interest deductions with respect to loans entered into after the effective date of section 461(h)) did not intend to influence either way the resolution of disputes affecting earlier years relating to

acceptable accrual methods for interest deductions. The House report states—

Interest on obligations issued on or prior to [June 8, 1984] are not subject to the statutory prohibition against noneconomic accruals of interest. However, the conferees intend no inference regarding the propriety of interest accruals with respect [to] such obligations that are inconsistent with the principles stated in Rev. Rul. 83-84. [H. Rept. 98-861 (Conf.), at 875 (1984), 1984-3 C.B. (Vol. 2) 129.]

We must decide whether respondent correctly exercised his discretion under section 446(b) in requiring Quincy Associates to change its method of accruing interest deductions relating to the note from the Rule-of-78's method to the economic-accrual method. In their respective motions for summary judgment, the parties argue about the effect of the Rule of 78's accrual method during the "early years" of the loan. Neither party restricts its argument to the first 3 years of the loan, the only years technically before us.

Petitioners contend that because the note calls for actual payments of interest upon a prepayment of the note, calculated under the Rule of 78's, the Rule-of-78's calculation of interest reflects the true and proper accrual of interest that will in all events have to be paid by petitioners. Petitioners accordingly argue that the income of Quincy Associates is not distorted and that Quincy Associates' use of the Rule of 78's results in a clear reflection of income. Petitioners also argue that, in any event, the Court should not grant respondent's motion for summary judgment on the clear-reflection-of-income issue due to disputed facts that would have to be tried before a decision can be reached as to whether Quincy Associates' method did not clearly reflect income.

Respondent contends that the material facts relating to Quincy Associates' failure to clearly reflect its income are not disputed and that those facts establish that Quincy Associates' use of the Rule-of-78's method of accruing interest did not clearly reflect income. For the reasons explained below, we agree with respondent.

The distortive effect of the Rule of 78's upon the taxable income or losses of Quincy Associates is established, in large part, by a comparison of the effect of accruing interest under the Rule of 78's with accrual under the economic-

accrual method. As set out in our statement of undisputed facts, the difference between the accrued interest deductions under each method in 1981 and 1982, and the difference between Quincy Associates' losses for tax purposes under each method, is material.

We review those differences below:

| Year | Rule-of-78's interest accrual | Quincy Associate's losses under Rule of 78's | Economic accrual of interest | Quincy Associate's losses under economic accrual | Dollar difference between fifth and third column | Percentage difference between sixth and fifth column |
|------|------|------|------|------|------|------|
| 1981 | $417,604 | ($462,069) | $249,847 | ($294,313) | $167,756 | 57% |
| 1982 | 399,078 | (409,227) | 233,415 | (243,565) | 165,662 | 68 |

The difference each year in excess of $150,000 (see sixth column) in accrued interest deductions (representing in excess of 50 percent of the losses of Quincy Associates as adjusted by respondent) on its face is material.

The cumulative difference (over the first 10 years and 2 months of the note) in the accrued interest deductions between accruing interest under the Rule of 78's and under the economic-accrual method also is material, as follows:

| First 10 years of note | Rule of 78's | Economic accrual | Difference | Percentage difference |
|------|------|------|------|------|
| 1980-1990 | $3,413,777 | $2,202,539 | $1,211,238 | 55% |

In Revenue Ruling 83-84, *supra*, respondent elaborated on the material income distortions caused by the use of the Rule of 78's when used to calculate interest accruals on long-term loans. The ruling used as an example a 30-year $100,000 loan, bearing an effective interest rate of 12 percent. Principal and interest are payable in 30 equal annual installments. Total interest to be paid in the example is $272,420. The annual payments due are $12,414.

Under the economic-accrual method, $12,000 of the first year's payment is allocated to interest ($100,000 × 12 percent), and the $414 balance is allocated to principal, leaving a principal balance due of $99,586. For the second year, the $99,586 balance is multiplied by the same effective interest rate of 12 percent to yield an interest accrual of $11,950. The $464 balance of the $12,414 annual payment is subtracted from the principal balance, leaving a new princi-

pal balance of $99,122. The process continues over the term of the loan.

Under the Rule of 78's, however, the results are substantially different. For the first year, the $272,420 total interest to be paid over the term of the loan is multiplied by a fraction—30 divided by 465 (namely, the number of periods remaining on the indebtedness over the sum of the periods' digits for the term of the loan). The resulting interest accrual for the first year is $17,575—$5,575 more than under the economic-accrual method, and a percentage increase in the interest accrual in the first year of 46 percent. Even if cash payments are made as due, the debtor's interest accruals exceed interest payments—his $12,414 cash payment does not begin to cover the interest accrued, nor does it make any reduction in the principal. The same result occurs in the second year. When the $272,420 total interest is multiplied by 29 divided by 465, the resulting interest accrual for the second year is $16,990, again significantly more than the $11,950 interest accrual under the economic-accrual method and significantly more than the $12,414 cash payment due. In the example given, after 13 years, interest accruals under the economic-accrual method begin to exceed Rule-of-78's accruals. At the end of the hypothetical loan term, total accrued interest is the same under both methods.

The distortive effects resulting from the use of the Rule-of-78's calculation of accrued interest in the context of long-term loans are particularly offensive from a Federal income tax standpoint where interest accruals in the early years of the loan significantly exceed the cash payment obligations of the taxpayer-debtors, and where the only event that triggers the taxpayer-debtors' obligation to make interest payments consistent with the Rule-of-78's accrual of the interest is an event which may never happen and over which the taxpayer-debtors have unilateral control (namely, prepayment of the loans).

Petitioners emphasize that agreements of the parties should control as to the accrual of interest and the allocation of loan payments between principal and interest. We reiterate, however, that such agreements will be recog-

nized only to the extent they clearly reflect income relating to the transaction. (See authorities cited, *supra,* pp. 1112-1113.)

We also note the limited circumstance that, under the agreement between the parties to the note, triggers Quincy Associates' liability to pay, in any year prior to 2003, interest computed under the Rule of 78's. As explained, the note provides that such liability arises only if and when a prepayment occurs, an event over which Quincy Associates—not FDEC—has sole discretion.

Scheduled payments due each year on the note are not related to the amount of accrued interest deductions under the Rule of 78's. The payments due in most years are significantly less than amounts accrued under the Rule of 78's. The scheduled payments that are due each year are to be allocated between principal and interest under the Rule of 78's, but that allocation bears little resemblance to the accrued interest deductions at issue in this case. Further, as stated, the weight to be given the agreement between the parties to a loan is diminished to the extent the transaction does not reflect arm's-length negotiations between unrelated parties.

On the undisputed material facts before us (namely, the terms and duration of the note, the amount of Quincy Associates' losses, and the accrual of interest using the Rule of 78's based on a potential prepayment of the note by Quincy Associates), we conclude that Quincy Associates' use of the Rule-of-78's method of accruing interest relating to the note does not clearly reflect the income of Quincy Associates for Federal income tax purposes. We sustain respondent's determination in this regard.

We also sustain respondent's determination that Quincy Associates should change its method of accruing interest income relating to the note from the Rule-of-78's method to the economic-accrual method. It is settled that where respondent correctly has determined that a taxpayer's method of accounting does not clearly reflect income, a presumption exists as to the correctness of the method of accounting respondent selects for the taxpayer. 2 J. Mertens, Law of Federal Income Taxation, sec. 12.07, at 44 (1985 rev.), citing *Thor Power Tool Co. v. Commissioner,*

439 U.S. 522 (1979), and *United States v. Catto*, 384 U.S. 102 (1966).

The use of the economic-accrual or actuarial method of accruing interest has been recognized for many years. For example, in 1967, the accounting industry endorsed economic-accrual principles of accounting for premiums and discounts on debt obligations over their terms. See Accounting Principles Board Opinion No. 12, AICPA (1967). In 1968, the Truth in Lending Act, 15 U.S.C. sec. 1601 et seq., 82 Stat. 146, was enacted. That act required the disclosure of annual interest due on most consumer loans to be computed on the actuarial or economic-accrual method. 15 U.S.C. sec. 1606. See also discussion *infra* at 1121-1123. Having sustained respondent's rejection of Quincy Associates' method of accruing interest, we also sustain respondent's determination that Quincy Associates must accrue interest relating to the note using the economic-accrual method.

We do not believe petitioners' allegations that other facts not before us (e.g., possible expert witness opinions) require a denial of respondent's motion for summary judgment. We are convinced that the applicable law and the material facts necessary to decide the issue presented are clearly before us. No genuine issue exists as to any material fact and respondent is entitled to summary judgment on this issue as a matter of law. Rule 121. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

In *Celotex*, the Supreme Court recently commented that, "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish that purpose." *Celotex Corp. v. Catrett, supra* at 323-324. We note that in *Saller v. United States, supra* (62 AFTR 2d at 5051, 88-2 USTC par. 9416 at 85,068), the Government's determination that the use of the Rule of 78's did not clearly reflect income was decided by way of a directed verdict.[6]

---

[6]In *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the Supreme Court recognized that the standard for granting summary judgments mirrors the standard for granting directed verdicts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

*Retroactive Effect of Revenue Ruling 83-84*

In Revenue Ruling 83-84, 1983-1 C.B. 97, respondent announced that the accrual of interest using the Rule of 78's would not be allowed for tax purposes. In Revenue Procedure 83-40, 1983-1 C.B. 774, respondent excepted from the directive of Revenue Ruling 83-84 short-term consumer loans of less than 48-months duration.

Petitioners contend that the change in accounting method at issue herein represents an improper retroactive application of Revenue Ruling 83-84. Petitioners contend that the Rule-of-78's method of accruing interest has been accepted and used for many years, that they reasonably relied on that prior authority, and that they are surprised and substantially prejudiced by respondent's application of the requirements of Revenue Ruling 83-84 to the accounting method used by Quincy Associates to accrue interest on the 23-year note. Petitioners contend that respondent has abused his discretion by applying the principles of Revenue Ruling 83-84 retroactively and that respondent on these facts should be estopped from doing so.

Under section 7805(b), regulations and rulings issued by respondent are presumed to be retroactive unless otherwise stated. *Manocchio v. Commissioner,* 710 F.2d 1400, 1403 (9th Cir. 1983), affg. 78 T.C. 989 (1982). In *Manocchio* we commented on respondent's authority or discretion to apply a ruling retroactively, as follows:

Although it is settled law that the Commissioner's action is reviewable for an abuse of discretion (see *Automobile Club of Michigan v. Commissioner, supra* at 184), his discretion generally will be upheld unless there is evidence of unconscionable injury or undue hardship suffered by the taxpayer through reliance on the erroneous position (see, e.g., *Schuster v. Commissioner, supra; Lesavoy Foundation v. Commissioner,* 238 F.2d 589 (3d Cir. 1956)); or the circumstances reveal an unfair disparity in the Commissioner's treatment of similarly situated taxpayers (see, e.g., *Farmers' & Merchants' Bank v. United States,* 476 F.2d 406 (4th Cir. 1973); *International Business Machines Corp. v. United States,* 170 Ct. Cl. 357, 343 F.2d 914 (1965)); or other unusual circumstances are present. As the Ninth Circuit observed in *Schuster,* however, "such situations must necessarily be rare, for the policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." 312 F.2d at 317. [*Manocchio v. Commissioner,* 78 T.C. at 1001.]

The Fifth Circuit in *Anderson, Clayton & Co. v. United States,* 562 F.2d 972 (5th Cir. 1977), listed a number of factors necessary to find an abuse of respondent's discretion with regard to the retroactive application of a regulation or ruling. A combination of all four factors may cause a court to limit a regulation or ruling to prospective application only. The factors listed in *Anderson* are—

(1) whether and to what extent the taxpayer justifiably relied on settled prior law or policy and whether and to what extent the putatively retroactive regulation alters that law;

(2) the extent, if any, to which the prior law or policy has been implicitly approved by Congress, as by legislative reenactment of the pertinent Code provisions;

(3) whether retroactivity would advance or frustrate the interest in equality of treatment among similarly situated taxpayers; and

(4) whether according retroactive effect would produce an inordinately harsh result.

[562 F.2d 981.]

Before further discussion of the retroactivity of Revenue Ruling 83-84, we emphasize that our primary holding herein (sustaining respondent's determination that Quincy Associates must accrue interest deductions relating to the note on the economic-accrual method) is not based on respondent's promulgation of Revenue Ruling 83-84, but on respondent's authority under sections 446 and 461. That authority predated Revenue Ruling 83-84, is not dependent on Revenue Ruling 83-84, and is not affected by Revenue Ruling 83-84.

As demonstrated below, the distortive and penalty features of the Rule of 78's, and the fact that those features are exacerbated as the term and interest rates of loans are increased, were recognized throughout the 1970's. We set forth below some of the pertinent published statements concerning the inappropriateness of using the Rule-of-78's accrual method in the context of long-term loans.

In 1973, the American Institute of Certified Public Accountants provided that—

Because sum-of-digits [Rule of 78's] calculations running over a long number of years produce results which are materially different from those obtained by using other mathematical techniques, its use in applying the effective yield method should be limited to contracts and loans with

initial maturities of not more than 84 months. [AICPA Industry Audit Guide: Audits of Finance Companies 37 (1973).]

In August of 1974, the National Conference of Commissions on Uniform State Laws published the final draft of the Uniform Consumers Credit Code (UCCC). Therein, the Rule-of-78's method for allocating interest on prepayment of consumer loans was rejected except for loans not exceeding 48 months. The conference chairman stated the rationale as follows:

To calculate unearned finance charges, the "sum of the balances" method or "Rule of 78" still may be used for transactions payable in [48] or fewer instalments, but otherwise, when it may make a substantial difference to the consumer, the actuarial method must be used. * * * [Buerger, "Uniform Consumer Credit Code (1974)," 28 Personal Fin. L.Q. 101, 105 (1974).]

One authority commented on the Rule of 78's as follows:

The 78's method is pretty good as long as the term is short. * * * However, when the term gets long the 78's procedure becomes absurd and should not be used. The higher the rate, the more dangerous also. [Hunt, "The Rule of 78: Hidden Penalty For Prepayment In Consumer Credit Transactions," 55 Boston Univ. L. Rev. 331, 338 (1975), quoting Financial Publishing Co., Yields If Prepaid, vi (1970).]

Another commented—

Since, in recent years, we have experienced a trend toward higher interest rates and since this has resulted in concomitantly longer loan maturities as borrowers have sought affordable monthly payment schedules, the overcharges inherent in the use of the Rule of 78s are a more relevant consideration in the consumer credit industry today than was the case in earlier periods. In particular, it is important that lenders be aware of the issues raised in this article. For as higher interest rates, larger loan amounts and longer loan maturities increase the magnitude of these prepayment penalties, we can expect the Rule's continued use to increasingly attract the attention of both consumer activists and national and state regulatory authorities. [Dyl & Joehnk, "Prepayment Penalties Inherent in the Rule of 78s—A Truth-in-Lending Issue," Journal of Bank Research 16, 20 (Spring 1977).]

In 1977, the United States Department of Housing and Urban Development (HUD) issued regulations prohibiting the use of the Rule of 78's with respect to mobile home loans that were insured by HUD under provisions of the National Housing Act, ch. 847, 48 Stat. 1246 (1934), 12

U.S.C. sec. 1701 et seq. HUD rejected proposals that Rule-of-78's computations be permitted for such loans, and the regulations required instead that the actuarial method be used to compute interest on all mobile home loans insured by HUD. 45 Fed. Reg. 45305 (1977).

Other articles noted as follows:

Growing criticism [of the Rule of 78's] centers on the arithmetical fact that the longer the term of the loan and the larger the amount financed, the greater the error in the Rule of 78ths. * * * [Perna, "Computing Interest Rebates Under the Rule of 78ths: A Formula For Usury Upon Default In Maximum-Interest Precomputed Credit Transactions," 10 St. Mary's L.J. 94, 100-101 (1978).]

and

the distortion in the Rule of 78s is relatively harmless for short-term loans, but the distortion rapidly escalates with the increase in the term of the note, and the increase in the interest rate. [McGuire, "Tax Shelters," J. of Real Estate Tax. 363, 368 (1982).]

The few court decisions that have addressed the use of the Rule-of-78's calculation of interest for tax purposes provide no precedent on which petitioners reasonably could have relied for using the Rule-of-78's accrual method in the context of a long-term loan similar to that involved in this case. In *James Bros. Coal Co. v. Commissioner,* 41 T.C. 917 (1964), the taxpayer's use of the sum-of-the-years-digits (Rule of 78's) method for accruing interest deductions on a short-term (36-month) loan was rejected, and respondent's use of the straight-line method was approved.

In *Gunderson Bros. v. Commissioner,* 42 T.C. 419 (1964), the accrual of deferred finance charges under the Rule of 78's was allowed, but in the context of short-term install-ment loans for the purchase of motor vehicles. In *Wall v. Commissioner,* T.C. Memo. 1978-369, interest deductions were calculated using a modified Rule-of-78's method, again in the context of a short-term, small business loan. As noted by the Court in *Wall,* in the short-term context of the loan at issue therein, the interest deductions were approxi-mately the same under each of the methods considered acceptable by the Court. 37 T.C.M. 1520, at 1528, 47 P-H Memo T.C. par. 78,369, at 1516. Further, a recent District Court opinion expressly rejected the use of the Rule of 78's

for a year (1981) prior to the promulgation of Revenue Ruling 83-84. *Saller v. United States, supra,* (62 AFTR 2d at 5051, 88-2 USTC par. 9416 at 85,068).

The precedential authority petitioners would need to justify Quincy Associates' use of the Rule-of-78's method of accruing interest and to preclude respondent from requiring a change in that method is not found in respondent's revenue rulings, nor in respondent's treatment of other taxpayers. Respondent's rulings that have addressed the use of the Rule-of-78's method of accruing interest have, with one exception, involved fully amortized, short-term, arm's-length loans. Such situations, as the financial and legal communities have recognized (see quotations, *supra,* pp. 1120-1121), cannot reasonably be regarded as a basis for using the Rule-of-78's method in a significantly different context.

In Revenue Ruling 72-100, 1972-1 C.B. 122, respondent concluded that the use of the Rule-of-78's method of accruing interest with respect to short-term, discounted loans satisfied the all-events accrual test of sections 451 and 461. Clarifying Revenue Ruling 72-100, respondent in Revenue Ruling 72-562, 1972-2 C.B. 231, concluded that the use of the Rule-of-78's method for allocating loan payments between principal and interest with respect to non-discounted loans also satisfied the all-events accrual test. Neither ruling dealt with the clear-reflection-of-income requirement of section 446(b) and neither had any reason to do so in light of the short-term, fully amortizable nature of the loans addressed. Such loans are significantly different from the non-arm's-length, 23-year loan involved herein under which periodic cash payment obligations to service the debt are significantly below the Rule-of-78's accrual of interest and do not amortize the debt principal over the term of the loan.

In Revenue Ruling 74-395, 1974-2 C.B. 46, respondent primarily addressed the character of commitment fees to be paid by a builder to the Federal National Mortgage Association (FNMA) in connection with a construction loan. After concluding that the commitment fee would be treated as interest, the ruling stated that prepaid interest would be subject to the Rule of 78's if the relevant loan agreement so

provided. The ruling is not clear as to what prepaid interest it was referring to. An intermediate bank had prepaid the FNMA commitment fee involved in the ruling. The taxpayer whose interest deductions were in question did not prepay any interest or commitment fee, but paid the fee to the bank over the life of the loan.

Revenue Ruling 74-395 also is unclear in its reference to the loan as a "long-term" construction loan obtained under section 236 of the National Housing Act, ch. 847, tit. II, sec. 235 (1934), as added Aug. 1, 1968, Pub. L. 90-448, tit. I, sec. 101(a), 82 Stat. 477, 12 U.S.C. sec. 1715z. The ruling does not state the specific term of the loan, nor the interest rate or method of accruing interest. In any event, Revenue Ruling 74-395 does not address the clear-reflection-of-income issue and, in our opinion, cannot fairly be read as a blanket approval of the use of the Rule of 78's for tax purposes regardless of the terms of the loan involved.[7]

In Revenue Ruling 74-607, 1974-2 C.B. 149, points to be paid on the maturity of construction loans with a duration of no more than 36 months were at issue. The ruling concluded that the points were to be treated as interest, were to accrue ratably over the life of the loan, and that such ratable accrual of points satisfied the all-events test for accrual accounting purposes. No discussion of the use of the Rule of 78's in connection with long-term loans is found in the ruling. Petitioners point out, however, that the ruling does state that "the Rule of 78's, as used in the context of Revenue Ruling 72-100, is merely a method of applying the effective interest rate to the unpaid balance of the indebtedness." As a practical matter, this statement arguably is true in the context of a short-term loan, but it obviously is not true when applied to loans similar to the Quincy Associates' 23-year loan. The offering memorandum of Quincy Associates (the relevant portions of which are quoted, *supra*, p. 1107) establishes that the professional advisers of Quincy Associates were fully aware that the use of the Rule of 78's resulted in interest accruals significantly

---

[7]We also note that long-term loans qualifying under sec. 236 of the National Housing Act apparently could not have allocated interest under the Rule of 78's. See Mortgagees' Guide, Assistance Payments under Section 235 and Interest Reduction Payments under Section 236, FHA G 4400.8 (HUD GUIDE, October 1968), and FHA Manual, Vol. X, Mortgagees' Handbook, ch. 800 (FHA December 1966).

different from the level of interest accruals approved in Revenue Ruling 74-607.

Revenue Ruling 79-228, 1979-2 C.B. 200, involved a bank's request to change its method of accruing interest on installment loans. The ruling does not identify the term of the loans. Under its prior method of accounting, the bank accrued all interest on the loans at the beginning of the loan, and therefore it would appear obvious that the loans involved were short-term loans. We cannot conceive of a bank accruing for tax purposes all interest due on, for example, a 20-year loan in the first year of the loan.

Revenue Ruling 79-228 discusses briefly the Rule-of-78's method even though the taxpayer had not requested a change to the Rule of 78's. The ruling states that Revenue Ruling 72-100, and Revenue Ruling 74-607, *supra,* implicitly recognized that the Rule of 78's satisfies the clear-reflection-of-income test of section 446(b). We reiterate that no discussion of the clear-reflection-of-income test of section 446(b) appears in Revenue Ruling 72-100 or Revenue Ruling 74-607. At most, to the extent those rulings can be regarded as implicitly recognizing that the Rule of 78's satisfies the clear-reflection-of-income test of section 446, it only would be in the context of the type of loans apparently involved in those rulings (namely, short-term, arm's-length loans).

In connection with the motions before us, affidavits have been submitted by various individuals who were participants in the Quincy Associates' transaction to the effect that they—in good faith and in their best professional judgment—believed that the Rule of 78's was an acceptable method of accruing interest. As explained, the legal authority supporting the use, for tax purposes, of the Rule of 78's involved loans with terms materially different from the Quincy Associates' loan. We have identified no authority that would support the use of the Rule of 78's in this context. Petitioners' affidavits thus provide no credible support for their motion for summary judgment.

Petitioners argue that, at the least, the affidavits raise factual questions concerning Quincy Associates' reliance on authority supporting the use of the Rule of 78's and that those factual questions preclude a decision granting respon-

dent's motion for summary judgment. One of the affidavits suggests that the "total atmosphere" surrounding the Rule of 78's in 1980 supported Quincy Associates' use of this method. We disagree.

Having concluded that no legal authority existed on which Quincy Associates' professional advisers reasonably could have relied in support of the accrual under the Rule of 78's of interest with respect to the Quincy Associates' loan, there simply is no viable material factual question before us as to whether Quincy Associates' advisers in fact relied on such authority. As a matter of law, they could not have relied on such authority because it did not exist.

The nonexistence of such authority was acknowledged and the advisers' "non reliance" on any such authority was carefully disclosed to the investors in the offering materials. Such investors, as a matter of law, cannot now credibly argue that they were not aware of the lack of authority for the use of the Rule of 78's, and that they had reason to believe that its use in this transaction was acceptable.

In summary, what we said in 1964 in *James Bros. Coal Co. v. Commissioner,* 41 T.C. 917 (1964), in the context of short-term loans, although no longer true in that context, applies today in the context of long-term loans. We have not been referred to—

a single accounting authority [financial or tax] that has expressly approved the use of [the Rule of 78's] for computing accrued and deductible interest on a promissory note in a situation like the present [i.e., in the context of long-term loans]. [41 T.C. at 923.]

For the reasons stated, we conclude that respondent's determination rejecting Quincy Associates' use of the Rule of 78's for the tax accrual of interest deductions is not precluded by a prospective-only application of Revenue Ruling 83-84.

*Increased Interest Under Section 6621*

Respondent's notice of deficiency included additional interest on substantial underpayments attributable to tax-motivated transactions, pursuant to section 6621(c).[8] The

---

[8]The additional interest was originally determined under sec. 6621(d), which was redesignated sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744. All such references made herein are to the redesignated section.

increased interest provided by section 6621(c) is to be determined where respondent establishes that there is a "substantial underpayment" (an underpayment of at least $1,000) in any taxable year "attributable to 1 or more tax motivated transactions." Tax-motivated transactions include "any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income." See sec. 6621(c)(3)(A)(iv). Section 301.6621-2T A-3(3), Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50391 (Dec. 28, 1984), includes as such an accounting method as follows:

> Any interest deduction disallowed for any period because the amount of the claimed deduction was computed using a method resulting in an amount of interest for a period that exceeds the true cost of the indebtedness for the period computed by applying the effective rate of interest on the loan to the unpaid balance of the loan for the period (i.e., the economic accrual of interest for the period), provided the interest is not accrued with respect to indebtedness incurred in connection with (i) the purchase, refinancing, or improvement of the principal residence of the taxpayer, or (ii) the purchase of consumer goods by the taxpayer (see Rev. Rul. 83-84, 1983-1 C.B. 97, and sections 163(e), 446(b), and 483) * * *

Section 301.6621-2T A-10, Proced. & Admin. Regs., provides that the increased interest rate applies to interest accruing under that provision after December 31, 1984, regardless of the date prescribed for payment of the tax. This same provision states that a taxpayer may stop the running of the increased interest by posting a bond or cash payment in the amount of the tax liability and interest already accrued. Sec. 301.6621-2T A-11, Temporary Proced. & Admin. Regs., 49 Fed. Reg. 50393 (Dec. 28, 1984).

We have held that respondent did not abuse his discretion in changing Quincy Associates' accounting method and in applying the change to the years at issue. As a result, petitioners are subject to deficiencies relating to their failure to report their share of Quincy Associates' interest deductions under the economic-accrual method. Under the explicit terms of section 6621(c) and its accompanying regulations relating to accounting methods, these deficiencies constitute "substantial underpayments." The imposition of interest on substantial underpayments as proposed

by respondent is sustained. See *Ewing v. Commissioner,* 91 T.C. 396 (1988).

In view of the foregoing,

*An appropriate order will be issued.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, JACOBS, WRIGHT, PARR, WELLS, WHALEN, and COLVIN, *JJ.,* agree with this opinion.

GERBER, WILLIAMS, and RUWE, *JJ.,* did not participate in the consideration of this case.