DON D. AND ELIZABETH A. DIAL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dial v. Commissioner
Docket No. 44906-86
United States Tax Court
T.C. Memo 1990-9; 1990 Tax Ct. Memo LEXIS 9; 58 T.C.M. (CCH) 1138; T.C.M. (RIA) 90009; January 8, 1990
Don D. Dial and Elizabeth A. Dial, pro se. Terry W. Vincent, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: This case was heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A of the Code. [1] The Court agrees with and adopts the Special Trial Judge's opinion, which is set forth below. *10 OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: This case is before the Court on respondent's motion for summary judgment. The issue to be decided is whether Treasury bill futures contracts are capital assets. If we determine that Treasury bill futures contracts are capital assets, then the losses are deductible as capital losses rather than ordinary losses. Respondent determined deficiencies in the 1977, 1978, and 1979 Federal income taxes of Don D. and Elizabeth A. Dial (petitioners) of $ 8,660, $ 228,788, and $ 129,007, respectively. The deficiencies determined by respondent resulted from the disallowance of ordinary losses claimed by petitioners from the purchase and sale of Treasury bill futures contracts. Petitioners were residents of Albuquerque, New Mexico, at the time they filed their petition. Treasury bills are short-term debt obligations of the United States Government. The short-term cash needs of the Federal Government are financed primarily with Treasury bills. The financial return on a Treasury bill is equal to the difference between the discounted price at which the bill is sold and the face value at which it matures. Commodity *11 futures contracts are executory contracts representing a commitment to deliver or receive a specified quantity and grade of a commodity during a specified future month at a designated price. Futures contracts are standardized as to quantity, place and time of delivery, and grade of commodity acceptable for delivery. The parties to a futures contract are the buyer, who is said to take a "long" position, and the seller, who takes a "short" position. The buyer is obligated to accept delivery of, and the seller is obligated to deliver, the quantity and grade of commodity at the time specified by the futures contract. A futures contract is satisfied only by performance or offset. An offset occurs when a trader takes a position equivalent, but opposite, to an earlier position. That is, a seller would offset a short position by taking a long position for the identical commodity for the same number of contracts in the same delivery month. Futures contracts are traded on an organized, federally regulated commodity exchange. Only a small percentage of futures contracts are actually performed, since, unlike the underlying commodity, they cannot be disposed of in a secondary market. Accordingly, *12 most futures contracts are satisfied by offset. During the taxable years 1977, 1978, and 1979, petitioner Don D. Dial sustained losses of $ 34,175, $ 511,850, and $ 214,331, respectively, on sales and purchases of Treasury bill futures contracts on the International Monetary Market of the Chicago Mercantile Exchange through his account at Clayton Brokerage Co.
Respondent contends that Treasury bill futures contracts are capital assets as defined in section 1221. Accordingly, respondent argues, the losses sustained by petitioners were capital losses. Although a Treasury bill comes within the section 1221(5) exception to the definition of a capital asset, respondent contends that Treasury bill futures contracts, as distinguished from the underlying commodity, do not fall within the statutory exception to treatment as a capital asset. [2] In this regard, respondent relies on Moody v. Commissioner, T.C. Memo. 1985-20. Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of "phantom factual questions." Cox v. American Fidelity and Casualty Co., 249 F.2d 616, 618 (9th Cir. 1957); *13 Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974). Summary judgment is not a substitute for trial, in that disputes over factual issues are not to be resolved in such proceedings. Naftel v. Commissioner, 85 T.C. 527 (1985); Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). Rule 121(a) provides that "Either party may move, with or without supporting affidavits, for a summary adjudication in his favor upon all or any part of the legal issues in controversy." Rule 121(b) provides: An opposing written response, with or without supporting affidavits, shall be filed within such period as the Court may direct. A decision shall thereafter be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. * * * The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. Weinburger v. Hynson, Westcott, and Dunning, Inc., 412 U.S. 609, 622 n. 18 (1973); Adickes v. S.H. Kress and Co., 398 U.S. 144, 157 (1970). *14 Petitioners' only response to respondent's motion is that "Summary Judgment is not warranted and that petitioner expects to present a line of facts and reasoning such as to overturn the applicability of Moody v. Commissioner, T.C. Memo. 1985-20 * * *." Such a response does not require a denial of respondent's motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Prabel v. Commissioner, 91 T.C. 1101, 1120 (1988), affd. 882 F.2d 820 (3d Cir. 1989). [3] Thus, we are satisfied that the applicable law and material facts are before us. In Arkansas Best Corp. v. Commissioner, 485 U.S. 212 (1988), the Supreme Court held that stock in a bank owned by a holding company was a capital asset because it fell within the broad statutory definition of "capital asset" in section 1221 and did not fall within one of the enumerated exceptions in that section. The Court specifically held that the exceptions to capital *15 asset treatment listed in section 1221 are exclusive. The body of section 1221 establishes a general definition of the term "capital asset," and the phrase "does not include" takes out of that broad definition only the classes of property that are specifically mentioned. The legislative history of the capital asset definition supports this interpretation, see H.R. Rep. 704, 73d Cong., 2d Sess., 31 (1934). ("[T]he definition includes all property, except as specifically excluded"); H.R. Rep. 1887, 83d Cong., 2d Sess., A273 (1954) ("[A] capital asset is property held by the taxpayer with certain exceptions"), as does the applicable Treasury regulation, see 26 CFR section 1.1221-1(a) (1987) ("The term 'capital assets' includes all classes of property not specifically excluded by section 1221"). Arkansas Best Corp. v. Commissioner, 485 U.S. at , 108 S.Ct. 971, 975. Our decision in Moody v. Commissioner, supra, is thus in accord with the opinion of the Supreme Court in Arkansas Best Corp. v. Commissioner, supra. Accordingly, the Treasury bill futures contracts were capital assets in the *16 hands of petitioners and the losses they sustained were capital losses. Respondent's motion for summary judgment will be granted. An order granting respondent's motion for summary judgment will be entered. Footnotes
1. This case was assigned pursuant to section 7443A and Rule 180. All section references are to the Internal Revenue Code as amended and in effect for the year at issue and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 1221(5) was repealed by the Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 505(a), 95 Stat. 331.↩
3. After the hearing the Court gave petitioners an additional opportunity to respond to the summary judgment motion. No further response was received from petitioners.↩