**COMMISSIONER OF INTERNAL REVENUE, Petitioner,**

v.

**JOSEPH E. SEAGRAM & SONS, INC., Respondent.**

No. 221, Docket 31352.

United States Court of Appeals Second Circuit.

Argued Feb. 8, 1968.

Decided April 23, 1968.

Mitchell Rogovin, Asst. Atty. Gen., Washington, D. C. (Lee A. Jackson, Meyer Rothwacks, Harry Baum, and Donald A. Statland, Attys., Dept. of Justice, on the brief), for petitioner.

White & Case, New York City (Josiah Willard and David Sachs, New York City, of counsel), for respondent.

Before WATERMAN and FEINBERG, Circuit Judges, and BARTELS, District Judge.*

* Of the Eastern District of New York, sitting by designation.

BARTELS, District Judge:

■ The Commissioner of Internal Revenue appeals the decision of the Tax Court holding that Julius Kessler Distilling Co., Inc., a wholly-owned subsidiary of Joseph E. Seagram & Sons, Inc., was not required to maintain Seagram's "LIFO" inventory layer dates in its inventory accounting for inventory received by Kessler from Seagram in a tax-free transaction where both corporations were using the LIFO method of accounting.

The material facts are not in dispute. Seagram is an Indiana corporation engaged in distilling, blending and bottling liquors, and Kessler is a Kentucky corporation engaged in the same business in the State of Kentucky. In January, 1957 Seagram decided to elect a then Canadian citizen as its president. The Kentucky law prohibited an alien from being an officer of a liquor company doing business in Kentucky. Seagram accordingly ceased doing business in Kentucky by making a capital contribution of substantially all of its assets in Kentucky to Kessler, its subsidiary, which had no alien officers. Included in the contribution were liquor inventories with a cost basis to Seagram of $13,780,453 together with Seagram's plant and other properties located in Kentucky. On January 31, 1957 Kessler's liquor inventories had an aggregate cost basis of $6,256,261, and Seagram's liquor inventories on that date, prior to the capital contribution, had an aggregate cost basis of $52,773,-881. The decision to make the contribution was not made in expectation of or for the purpose of obtaining a tax benefit for either Seagram or Kessler. At all times, both before and after the capital contribution, Seagram and Kessler used the method of accounting for liquor inventories provided in Section 472 of the Internal Revenue Code of 1954 [1] (the LIFO method).

Kessler maintained four separate classifications of LIFO inventory in "layers" or increments, each layer consisting of a month's acquisition of each classification of inventory. The layers were priced by reference to the actual cost of the liquor acquired in order of acquisition by month, and consisted of bulk in bond whiskey, bulk in bond spirits, bulk whiskey tax paid and domestic case goods tax paid. Seagram employed the same LIFO inventory method and classification, except that it had a fifth inventory classification, bulk in bond gin. The capital contribution to Kessler included all five types of inventory, four of which were the same as those held by Kessler.

Kessler accounted for these contributed inventories in each of the five classifications as single acquisitions as of the date of the transfer, at the total cost of each class to Seagram without retaining the identity of Seagram's LIFO layers and without integrating the inventories into its own monthly LIFO layers, based on Seagram's acquisition dates. Instead it included the entire amount of contributed inventory within each classification in its LIFO layer for that classification for February, 1957, and determined the cost per gallon of each class so acquired by dividing the total cost to Seagram of all the gallons acquired within each class by the number of gallons acquired in each respective class.

The Commissioner determined that Kessler should retain in its inventory records for tax purposes, the identity of Seagram's LIFO layers or increments within each class of inventory contributed by Seagram and integrate such layers by date into the existing layers within each similar class of inventory held by Kessler both before and after the capital contribution. This adjustment resulted in a decrease of $159,225 in the cost of goods sold by Kessler in its taxable year ended July 31, 1959 and in an increase in Kessler's taxable income for such year in

1. All references hereafter to Sections are to the Internal Revenue Code of 1954, 26 U.S.C.A., and all references to Treasury Regulations are to regulations issued under that Code.

the same amount. Seagram, as the ultimate transferee of Kessler's assets, will be liable for any tax deficiency resulting from the adjustment. The Tax Court overruled the Commissioner's determination and held that Seagram was not liable for the contested amount.

By permitting Kessler to treat the inventory received from Seagram as acquired in February, 1957, without maintaining Seagram's LIFO layer dates in integrating that inventory into its own layer system, the Tax Court has allowed Kessler to (1) first cost against its first sales the higher cost inventory received from Seagram, and (2) average the different unit costs of all of Seagram's transferred layers. The result has been that Kessler's income for the year in question has been reduced and the different unit costs of the transferred inventory have been averaged which would have been impossible in Seagram's hands. Seagram argues that if the inventory layers transferred to Kessler had not been so transferred, those layers would have been the first to be costed out in the hands of Seagram under its LIFO method. Seagram chose this transfer to solve its problem of doing business in Kentucky, and the issue presented is what is the proper treatment to be applied to the transferred inventory in order to properly reflect Kessler's income according to the best accounting procedure and not what would have happened if Seagram had not made the transfer to its subsidiary, which in any event is speculation depending upon the volume of Seagram's most recent purchases and sales.

In its opinion the Tax Court relied upon Textile Apron Co., Inc., 21 T.C. 147 (1953), as controlling in principle on the issue here presented, although recognizing that the case was not precisely in point. In that case three proprietorships, each using the LIFO method, merged into one corporation, which then claimed the right to carry over transferors' LIFO method of inventorying goods. The Tax Court denied the corporation this right on the ground that it failed to file an application with and to obtain the approval of the Commissioner to use the LIFO method and hence was compelled to use the FIFO method of inventorying goods. In this case the Tax Court held that since Kessler was an entity separate from Seagram, the latter's method of computing inventories had no continuing effect upon Kessler and that there was no "essential difference between the acquisition of inventory in a tax-free exchange such as was involved in the *Textile Apron Co., Inc.* case and the acquisition of inventory by contribution such as is involved in the instant case."

We believe there is a difference between the present case and Textile Apron Co., Inc., Akron, Canton & Youngstown R.R. Co., 22 T.C. 648 (1954), modified on other grounds, 56–1 U.S.T.C. ¶ 9282 (6 Cir. 1956), and New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934), cited by Seagram in support of the Tax Court's holding. Those cases held that the accounting method and tax attributes of a transferor do not carry over to the successor transferee corporation because the successor is a new taxable entity. We are not concerned here with the transfer of all of Seagram's assets to Kessler, and Kessler cannot be treated as the successor of Seagram. There is no attempt by the Commissioner to impose Seagram's method of computing inventory valuation upon any of Kessler's inventories. He merely proposes that in accounting for the transfer under Kessler's LIFO method, Kessler integrate the inventory into its own layers in accordance with Seagram's acquisition dates. Involved is the transfer of only a relatively small portion of Seagram's assets to its wholly-owned subsidiary, after which both continue to conduct their business as theretofore using the LIFO inventory method.

The traditional rule with respect to intermingled inventory that cannot be matched with specific invoices, is that cost is calculated under the first-in, first-out (FIFO) method, so that inventory on hand is deemed to be that most recently

purchased. In 1938 and 1939 Congress [2] for the first time granted permission to taxpayers to determine their inventories under the LIFO method. In order to obtain the benefit of the privilege, a taxpayer must apply for permission to employ the method and his application must be approved by the Commissioner (Treas. Reg. § 1.472–3). Neither FIFO nor LIFO corresponds with actual physical inventory turnover but the two methods are used for the purpose of reflecting what normally may be considered the gross income of a particular business. In a period of rising prices the FIFO method tends to reflect a larger income while the LIFO method tends to reflect a lesser income because the taxpayer is not required to include as profit the increases in the value of his inventory. In a period of declining prices, FIFO will show smaller profits while LIFO will reflect larger profits because the taxpayer will be required to cost out the decrease in the cost of inventory. R. H. Macy & Co. v. United States, 255 F.2d 884 (2 Cir. 1958), cert. denied, 358 U.S. 880, 79 S.Ct. 119, 3 L.Ed.2d 110.

The inventory method of accounting, including the use of LIFO inventories, is subject to conditions prescribed by statute and the Treasury Regulations. According to Section 471, the basic requirements for taking inventories are that they must conform to the best accounting practice and must clearly reflect the taxpayer's income. See, 2 Mertens, Law of Federal Income Taxation, § 16.05. The Regulations provide that to clearly reflect income, the taxpayer's inventory practice must be consistent from year to year and that consistency is given a greater weight than any particular method or basis for inventory valuation (Treas.Reg. § 1.471–2(b)). There is no problem in applying the LIFO method to inventory acquired by purchase or manufacture because there is only one date of acquisition, but a different problem is raised in a tax-free transaction where the transferor has, by manufacture or purchase, acquired inventory on one date and on a later date transfers a portion thereof to a wholly-owned subsidiary.

The issue in this case has been somewhat blurred by the emphasis placed by the parties on specific sections of the Code. Seagram contends that Section 472, which authorizes the application of the LIFO method, mandates the use of Kessler's acquisition date. That section states in subdivision (b) that in inventorying goods specified, the taxpayer shall treat the inventory on hand at the close of the taxable year as being: First, the inventory included in the opening inventory of the taxable year; and second, "those acquired in the taxable year." The Commissioner asserts that Section 362 (a) of the Code, which, by cross-reference to Section 118, provides that when property is acquired by a corporation through a tax-free contribution to capital, the basis of the property "shall be the same as it would be in the hands of the transferor," requires Seagram's acquisition dates. He argues that since the date of the cost basis in the hands of Seagram is earlier than the date of the transfer in 1957 to Kessler, the date basis of Seagram follows its cost basis under Section 362(a) and that accordingly Seagram's acquisition dates are the only dates which may be used; otherwise, he claims, inventory accounting would lack consistency from year to year and Kessler's income would be distorted.

Neither of these sections, in our opinion, is controlling because they do not specifically or impliedly cover a tax-free capital contribution of inventory from a parent to its subsidiary. The legislative history seems to be silent upon the issue and the controversy cannot be determined by an extension of the definition of the word "basis" in Section 362(a) or a restriction of the definition of the word "acquired" in Section 472(b) (1). In the absence of something more specific, these sections must be read in the light of the

2. 1938 Act, Sec. 22; Reg. 101, Art. 22(d)–1 to Art. 22(d)–4 and 1939 Act, Sec. 219, amending I.R.C. (1939), Sec. 22(d).

policy underlying the Internal Revenue Code that income must be determined in the final anaylsis in accordance with good accounting practice.[3] Therefore, the above sections must be read together with Sections 471 and 472(a) and Regulations §§ 1.471–2(b) and 1.472–4 requiring that the taking of inventory must accord with the best accounting practice for the purpose of clearly and consistently reflecting income.

It is the underlying purpose of the LIFO method of inventory accounting to match current income against *current* costs, which in turn includes the cost of that inventory most recently purchased or produced. The inventory received through a tax-free contribution to capital does not represent current cost to Kessler and its use as of the date of Kessler's acquisition seems to undercut the underlying assumption of the LIFO method. To determine what accounting treatment would be appropriate, it is proper to inquire what method of inventory valuation the taxpayer would be required to use in recording this transaction for credit purposes, stockholders' reports, and registration of securities. In the commercial world a transaction between a parent and its wholly-owned subsidiary is not usually deemed to have an independent accounting significance. A consolidated report of both corporations is generally required for both balance sheet and profit and loss statements.[4] Under those circumstances, generally accepted accounting procedure requires that appropriate adjustments be made in such consolidated statements to compensate for transactions between members of the consolidated group. See, Reg. S-X, Article 4, Rule 4-08, of the S.E.C.; Rappaport, Louis H.,

SEC Accounting Practice and Procedure (2 ed. 1963) at § 15.1; Montgomery, Robert H., Lenhart, Norman J., & Jennings, Alvin R., Auditing (7 ed. 1949), chap. 21 at p. 477. A consolidated financial statement for Seagram and Kessler after the capital contribution of Seagram to Kessler would, in effect, require Kessler to integrate Seagram's inventory layers in accordance with Seagram's acquisition dates in order to properly reflect the income of both. The fact that a subsidiary under certain circumstances is treated as an entity separate from its parent (Moline Prop., Inc. v. C. I. R., 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed.2d 1499 (1943); National Investors Corporation v. Hoey, 144 F.2d 466 (2 Cir. 1944)) is not controlling in determining what is the proper accounting principle to be applied. Kessler may be treated as a separate entity but nevertheless be required to apply, as the proper accounting principle, Seagram's LIFO layer method in accounting for the inventory acquired by it cost free.

Seagram argues that the Commissioner has no authority to impose upon the taxpayer an accounting method or procedure preferred by him where the method used by the taxpayer does not violate any tax or accounting rules or regulations, citing Klein Chocolate Co., 36 T.C. 142 (1961); and Koebig & Koebig, Inc., 23 T.C.M. 170 (1964). In those cases the factual situations were quite different. The taxpayers had consistently used accepted methods of reporting income acquiesced in by the Commissioner, in one case involving inventory valuation and in the other case the deduction of expenses under the accrual method of accounting in a long-term contract business. In both

3. United States v. Anderson, 269 U.S. 422, 440, 46 S.Ct. 131, 70 L.Ed. 347 (1926); Caldwell v. C. I. R., 202 F.2d 112, 114 (2 Cir. 1953); Irvine v. United States, 212 F.Supp. 937, 939 (D.Wyo.1963). Section 1.446–1 of the Regulations provides in (a) (1): "The term 'method of accounting' includes not only the over-all method of accounting of the taxpayer but also the accounting treatment of any item." and in (a) (2): "Each taxpayer

shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income."

4. 26 U.S.C.A. § 1501 and the regulations issued thereunder grant to an affiliated group of corporations permission to file a consolidated tax return.

cases the taxpayers' methods properly reflected income over the years but the Commissioner sought to substitute another method which he preferred, which the Tax Court denied. The Commissioner in this case is not seeking to substitute one accounting method for an accepted accounting method heretofore used by the taxpayer. His determination is not an expression of preference, but the application to a particular and non-recurring transaction of what he claims is the proper accounting principle as opposed to the taxpayer's procedure which he asserts violates proper accounting procedure.

■ The Commissioner has determined that in treating this particular transaction the best accounting practice requires Kessler to retain the identity of Seagram's LIFO layers and to integrate them into its own corresponding monthly layers of inventory in order to consistently and properly reflect Kessler's income. If the taxpayer's method of accounting for inventory does not reflect income as clearly as the method proposed by the Commissioner, it is within the Commissioner's discretion to insist upon his method and he need not predicate his determination upon a showing of bad faith on the part of the taxpayer. Caldwell v. C. I. R., 202 F.2d 112 (2 Cir. 1953). When the Commissioner has made such a determination, the taxpayer faces a heavy burden of proof to establish that it was arbitrary or an abuse of discretion. Lucas v. Kansas City Structural Steel Co., 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848 (1930); Lenox Clothes Shop v. C. I. R., 139 F.2d 56 (6 Cir. 1943); Finance & Guaranty Co. v. C. I. R., 50 F.2d 1061 (4 Cir. 1931). Seagram has failed to satisfy this burden.

An objection raised by the Commissioner of lesser importance relates to Kessler's averaging the total costs of Seagram's contribution in each class of inventory, although portions of that inventory were acquired by Seagram at varying unit costs over several years. If Kessler's acquisition is treated as of February, 1957, the Commissioner's objection is only another way of raising his prior objection to Kessler's failure to integrate layers according to Seagram's dates. But if we treat the transfer, as we believe it should be treated, as requiring the use of Seagram's earlier dates of acquisition, a different problem of averaging costs in the process of integration, is presented. To insist that Kessler segregate both Seagram's and Kessler's costs for the same layer in the same month without averaging the cost of both layers seems wholly impractical and unnecessary. At any event, we believe that averaging of Seagram's layers which are integrated into corresponding Kessler layers, is authorized under Reg. § 1.472–2(d) and accordingly find the Commissioner's objection without merit.

Reversed.