ALAN J. LEVY AND MARSHA O. LEVY, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 18780-84, 32881-85,      Filed June 28, 1989.
14079-86.

*Mervin M. Wilf,* for the petitioners.*
*Alan E. Cobb,* for the respondent.

SWIFT, *Judge:* Respondent determined deficiencies in
petitioners' Federal income taxes and additions to tax as
follows:

| Year | Deficiency | Additions to tax | |
| | | Sec. 6651(a)(1)[1] | Sec. 6661 |
| 1980 | $20,432.00 | $501.35 | --- |
| 1981 | 28,194.00 | --- | --- |
| 1982 | 21,011.50 | --- | $2,101.15 |

Petitioners[1] claim operating loss and business expense
deductions and investment tax credits arising from their
purchase of an interest in the Cooper River Office Building
Associates (CROBA) limited partnership. The parties have
agreed that this Court should, at this time, decide only the

---

*Briefs amici curiae were filed by John A. Craig as an attorney for The FDI Group, and by
John S. Nolan and Frederick H. Robinson as attorneys for Commercial Properties Group, Inc.

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954
as amended and as in effect during the years in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

principal issue in the case, namely, whether a partnership's use of the Rule-of-78's method of accruing interest deductions relating to a long-term real estate loan does not clearly reflect income.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Alan J. Levy and Marsha O. Levy, husband and wife, resided in Plantation, Florida, at the time they filed their petitions in these consolidated cases. Petitioners are cash basis taxpayers who report their income for tax purposes on a calendar year basis. They filed Federal income tax returns for 1980, 1981, and 1982 with the Internal Revenue Service Center in Atlanta, Georgia. Marsha Levy is a petitioner in this proceeding solely because she filed joint Federal income tax returns with her husband during the years in issue. All references to "petitioner" in the singular are to Alan J. Levy.

In late 1980 or early 1981, the CROBA limited partnership allegedly purchased two buildings located on 4.25 acres of land in Camden County, New Jersey. The stated purchase price for the buildings was $5,300,000, payable by a cash downpayment of $530,000 and by the assumption of a 17-year nonrecourse mortgage note in the amount of $4,770,000 (hereinafter referred to as the note or the 17-year note). The note reflects a nonamortizing, interest-only loan for a term of 204 months (17 years), commencing on August 1, 1980, and continuing until July 31, 1997, with a stated interest rate of 11 percent per year, with equal monthly payments of interest only of $43,725.

The accrual of interest on the note, for the period August 1, 1980, until July 31, 1997, is calculated on the basis of the Rule-of-78's method of calculating interest. The note provides, in pertinent part, as follows:

notwithstanding any contrary implication, interest to be earned on this debt during the period August 1, 1980 through July 31, 1997 shall accrue and be earned on the sum of the years digits method (or Rule-of-78's).

The document further provides—

In the event of any default hereunder, the entire principal indebtedness evidenced hereby, together with all arrearages of interest thereon and

other sums due hereunder and under the Wrap Mortgage shall, at the option of Payee, become due and payable immediately, anything herein or in the other instruments or agreements between Payee and Borrower contained to the contrary notwithstanding, and execution may forthwith issue for collection of the same, including a reasonable attorney's fee.

After the first 17 years of the note (namely, after July 31, 1997), the note is to be extended for another 20 years during which equal monthly payments of $49,235 are due, representing principal and interest at 11 percent per year, with the entire remaining principal balance due on the last day of July 2017.

As we recently explained in *Prabel v. Commissioner,* 91 T.C. 1101, 1104-1105 (1988), Court-reviewed, on appeal (3d Cir., Mar. 27, 1989), the Rule-of-78's (also referred to as "sum of the years digits") is a method of allocating payments due on loans between principal and interest. It originated in the 1930's as a simplified method, in the absence of computers, of calculating rebates on consumer installment loans where the loans were prepaid. Under the Rule-of-78's, each separate installment period relating to a loan has associated with it an arithmetic fraction that is applied to the total precomputed interest due over the term of the loan. The product of that calculation is regarded as the portion of the total precomputed interest that is earned from origination of the loan until the end of the particular installment period. Scott, "Answering questions about the 'Rule-of-78ths,' " 68 Banking 124 (Sept. 1976), contains a concise explanation of the history of the Rule-of-78's.

The calculation required under the Rule-of-78's has been explained simply as follows:

The rule of 78's is based on the idea of a 12-month loan repayable in equal installments. If the borrower takes out a $1200 loan, he has the use of 12 $100 bills the first month, 11 $100 bills the second month, 10 the third month, and only one the last month. During the full 12 months, he therefore has the use of 78 $100 bills (12 plus 11 plus 10 * * * plus 1). The number 78 becomes the denominator of the fraction, while the numerator depends upon when the prepayment takes place. If prepayment is made at the 7th installment, 57/78 of the total finance charge [is regarded as having] been earned by the creditor (the numerator is the sum of 12, 11, 10, 9, 8, and 7). * * * this would amount to 57/78 of $211.68 [the total interest due on the loan], or approximately $155. Therefore, [the debtor's] rebate due on August 1 would be approximately

$57. [1 J. Fonseca, Handling Consumer Credit Cases, sec. 3:7, at 101 (3d ed. 1986). Fn. ref. omitted.]

Where the loan has more than 12 payment periods, the denominator under the Rule-of-78's is different but the basic calculation is the same. The sum of the digits of the total number of payment periods for the loan is used as the denominator, and the sum of the digits of the particular installment period for which the calculation is being made is the numerator (e.g., payment at the end of the second month of a 24-month installment loan will result in the use of the fraction 47 divided by 300 to calculate interest due on prepayment of the loan).

In the present case, because payments due (absent a default) in each of the first 9 years of the note are significantly less than the interest accruals in those years under the Rule-of-78's, actual payments due each month on the note from the CROBA partnership are allocated exclusively to interest. In 1980 through 1988 (see chart, *infra,* p. 1365), the payments due are not sufficient to cover the amount of interest calculated under the Rule-of-78's, and negative amortization occurs (i.e., interest calculated each month under the Rule-of-78's, but not due, is carried over to subsequent years). Under the terms of the note, no further interest accrues on the unpaid interest that creates the negative amortization (i.e., no compounding of interest occurs).

For Federal income tax purposes, the CROBA partnership reports its income on the accrual method of accounting, but the amount of interest relating to the note accrued each year is not limited to the amount of interest payments due each year. Instead, for tax purposes, interest is accrued by the CROBA partnership with respect to the note on the basis of the Rule-of-78's method as if the partnership had the liability each year to pay the lender the full amount of interest calculated under the Rule-of-78's. We emphasize that the amount of interest accrued under this method, for tax purposes, is not limited to the amount of payments that are due each year.

Assuming no default occurs on the note payments that are due each year, the CROBA partnership's method of accruing interest deductions with respect to the note for tax

purposes will not result in any more interest deductions being claimed by the CROBA partnership over the total life of the loan than would be accrued if the CROBA partnership used either a ratable, straight-line method or an economic-accrual method to accrue the total interest due over the full term of the loan. The CROBA partnership's use, however, of the Rule-of-78's method to accrue interest results in the accrual in the early years of the note of significantly higher interest deductions for CROBA than would be available under either the ratable or economic-accrual methods of accruing interest, and it results in interest deductions in those years significantly higher than the CROBA partnership's total annual payment obligations on the note (absent a default).

Because of the significant differences in the accrued interest deductions during the early years (i.e., the first 9 years) of the note under the different methods of accruing interest, respondent determined that the use by the CROBA partnership of the Rule-of-78's interest accrual method did not clearly reflect the partnership's taxable income. Respondent disallowed the accrued interest deductions claimed by the partnership and changed the partnership's method of accruing interest for tax purposes to the economic-accrual method.

The economic-accrual method of accruing interest (also referred to as the actuarial method) is based on a calculation of the true or effective uniform annual interest rate relating to a loan. The calculation under this method has been explained by respondent as follows:

> The effective rate of interest is a measure of the cost of credit, expressed as a yearly rate, that relates the amount and timing of values received to the amount and timing of payments made, and is thus a reflection of the cost of the amount borrowed for the time it is actually available. * * * Therefore, the effective rate of interest, which is a uniform rate over the term of the loan and is based on the amount of the loan and the repayment schedule provided in the loan agreement, when applied to the unpaid balance of the indebtedness for a given period, will produce the true cost of that indebtedness for that period. That cost is referred to as the economic accrual of interest for that period. * * * [Rev. Rul. 83-84, 1983-1 C.B. 97, 98. Citations omitted.]

Set forth below in schedule format for each year of the 17-year note of the CROBA partnership are the following: (1)

Interest deductions that would be accrued by the partnership under the Rule-of-78's accrual method; (2) the portion of the total payments due each year on the note that would be allocated to interest under the Rule-of-78's; (3) interest deductions that would accrue each year under the economic-accrual method; and (4) the yearly differences between the accrued interest deductions using the Rule-of-78's method and the economic-accrual method:

| Year | Rule-of-78's accrual | Portion of payments allocated to interest under Rule-of-78's[2] | Economic accrual of interest | Difference between Rule-of-78's accrual and economic accrual |
|------|------|------|------|------|
| 1980 | $430,851 | $218,625 | $218,625 | $212,226 |
| 1981 | 990,531 | 524,700 | 524,700 | 465,831 |
| 1982 | 929,103 | 524,700 | 524,700 | 404,403 |
| 1983 | 867,675 | 524,700 | 524,700 | 342,975 |
| 1984 | 806,246 | 524,700 | 524,700 | 281,546 |
| 1985 | 744,818 | 524,700 | 524,700 | 220,118 |
| 1986 | 683,390 | 524,700 | 524,700 | 158,690 |
| 1987 | 621,961 | 524,700 | 524,700 | 97,261 |
| 1988 | 560,533 | 524,700 | 524,700 | 35,833 |
| 1989 | 499,105 | 524,700 | 524,700 | (25,595) |
| 1990 | 437,677 | 524,700 | 524,700 | (87,023) |
| 1991 | 376,248 | 524,700 | 524,700 | (148,452) |
| 1992 | 314,820 | 524,700 | 524,700 | (209,880) |
| 1993 | 253,392 | 524,700 | 524,700 | (271,308) |
| 1994 | 191,963 | 524,700 | 524,700 | (332,737) |
| 1995 | 130,535 | 524,700 | 524,700 | (394,165) |
| 1996 | 69,107 | 524,700 | 524,700 | (455,593) |
| 1997 | 11,945 | 306,075 | 306,075 | (294,130) |
| | 8,919,000 | 8,919,900 | 8,919,000 | - - - |

The CROBA partnership made no payment on the note in excess of those called for in the above schedule.

Petitioner purchased one unit of the CROBA limited partnership for $59,300, of which $11,800 was paid in cash

[2]It will be noted that the amounts set forth in this third column constitute the total payments due each year on the note. As is evident, by comparing the figures in the second column with those in the third column, during the early years of the note (namely, 1980 through 1988) the Rule-of-78's accrual of interest on the note exceeds the total payments due each year. The total payments due therefore in 1981 through 1988 are allocated solely to interest, and the excess interest accruals result in negative amortization of accrued interest. Thus, even though the Rule-of-78's accrual of interest in years 1989 through 1997 is less than the payments due, in years 1989 through 1997 the entire payments due are still to be allocated or credited to the negatively amortized interest from earlier years.

on December 9, 1980, and the balance in promissory notes of $21,000, $14,000, and $12,500, due in three installments on March 1, 1981, 1982, and 1983. The three promissory notes were guaranteed by letters of credit issued by the Summit Bank to Cooper River Associates. On February 28, 1981, petitioner paid $23,262 to the partnership in payment of his first installment note, and on March 10, 1982, petitioner paid $16,199 in payment of his second installment note. Petitioner's interest in the income (losses) of the partnership was 2.829 percent.

The limited partners of the CROBA limited partnership contributed a total of $2,075,500 to the partnership, consisting of $413,000 in cash and $1,662,500 in installment notes payable in 1981, 1982, and 1983. The limited partners acquired a 99 percent interest in the income (losses) of the partnership for Federal income tax purposes. Each individual limited partner's interest in the income (losses) and investment tax credits is determined pro rata in accordance with his or her capital account.

For the partnership's taxable year 1980, which included only the months of August through December, the partnership reported interest expenses of $430,900. For the year 1981, the partnership reported interest expenses of $990,528, and for 1982, it reported interest expenses of $929,097. Respondent disallowed the above-claimed interest expenses to the extent they exceeded the amount of interest that would be accrued under the economic accrual method. For the years before us, the interest deductions claimed and the interest deductions respondent would allow are—

| Year | Rule-of-78's method | Economic accrual | Difference |
|------|---------------------|------------------|------------|
| 1980 | $430,900 | $218,625 | $212,275 |
| 1981 | 990,528 | 524,700 | 465,828 |
| 1982 | 929,097 | 524,700 | 404,397 |

OPINION

In *Prabel v. Commissioner,* 91 T.C. 1101 (1988), Court-reviewed, on appeal (3d Cir., Mar. 27, 1989), we held that the use of the Rule-of-78's method of accruing interest deductions relating to long-term loans does not result in a clear reflection of income, and we held that respondent's

determination to that effect for the years 1980, 1981, and 1982 did not constitute an improper retroactive application of Rev. Rul. 83-84, 1983-1 C.B. 97. In *Prabel,* the difference between the Rule-of-78's accrual of interest and the economic accrual of interest was material.

In the present case, as in *Prabel,* the difference in the amount of interest accrued each year under the Rule-of-78's method and the amount of interest that would be accrued under the economic-accrual method is material, as shown by the table below:

| Year | Rule-of-78's method | Economic accrual | Difference | Percentage difference |
|------|---------------------|------------------|------------|-----------------------|
| 1980 | $430,900 | $218,625 | $212,275 | 97 percent |
| 1981 | 990,528 | 524,700 | 465,828 | 89 percent |
| 1982 | 929,097 | 524,700 | 404,397 | 77 percent |

The total difference over the first 9 years of the note in accrued interest under the Rule-of-78's method and under the economic-accrual method also is material, as follows:

| Year | Rule-of-78's method | Economic accrual | Difference | Percentage difference |
|------|---------------------|------------------|------------|-----------------------|
| 1980-1988 | $6,635,108 | $4,416,225 | $2,218,883 | 50 percent |

As we concluded in *Prabel,* interest deductions accrued by the CROBA limited partnership under the Rule-of-78's method caused a material distortion in the taxable income of the partnership. The use by the partnership of the Rule-of-78's method of accruing interest did not result in a clear reflection of partnership income. The partnership's interest deductions are to be limited to the amounts calculated by respondent under the economic-accrual method.

Petitioner argues that *Prabel* is not controlling because in the instant case the interest was accrued and *earned* each year under the Rule-of-78's method of accruing interest, while in *Prabel* the interest that accrued each year under the Rule-of-78's method was payable only in the event of prepayment of the note, an event over which the partnership had sole control. Petitioner argues that this element of control over prepayment (and thereby control over actual payment of interest calculated under the Rule-of-78's) distin-

guishes *Prabel* from the instant situation where the loan documents provided that interest will be earned under the Rule-of-78's for all purposes.

Petitioner misses the primary point of *Prabel,* namely, that where interest accruals calculated under the Rule-of-78's method materially exceed the amount of interest that would be accrued under the economic-accrual method and where the interest accruals under the Rule-of-78's method materially exceed the amount of interest the taxpayer is required each year to pay under the payment schedule established in the loan transaction, respondent has the authority under section 446(b) to remedy the resulting distortion in the taxpayer's taxable income. *Prabel v. Commissioner, supra* at 1116-1119.

As previously indicated, in this case the amount of interest accrued under the Rule-of-78's method exceeded the amount of interest payments due in the first 3 years of CROBA's operations by 97 percent, 89 percent, and 77 percent. This represents a clear distortion of the partnership's income. The fact that the partnership note provides that interest will be "accrued" or "earned" under the Rule-of-78's is largely semantic—the operative provisions of the note provide that (absent a default) interest is to be paid during the first 9 years of the note in much lower amounts than it is accrued or earned. The distortion caused by the use of the Rule-of-78's method of calculating accrued interest deductions for the partnership is similar to that found in *Prabel.*

Petitioner argues that our ruling in *Prabel* discriminates against borrowers who obtain loans in an era of high interest rates. Petitioner implies that accrual of interest using the Rule-of-78's method would be approved if interest rates were low, because when interest rates are low the difference between interest accruals under the Rule-of-78's method and the economic-accrual method is not so large. We do not have that transaction before us, and we are not inclined to speculate as to respondent's or as to our position with regard to a significantly different transaction. The use of the Rule-of-78's accrual method in the instant transaction causes a material distortion in the partnership's taxable income, and interest accrued under that method differs

materially from the annual interest payment obligations of the partnership absent a default.

Petitioner points out that the initial term of the loan at issue is 17 years, 6 years less than the 23-year loan term involved in *Prabel*. Because, however, no portion of the principal due on the note at issue is paid during the first 17 years of the note, the distortion caused in the instant transaction by the use of the Rule-of-78's accrual method is, on a percentage basis, greater than that in *Prabel*, notwithstanding the shorter loan term.

Finally, petitioner notes that, for certain short-term installment loans, respondent permitted the continued use of the Rule-of-78's accrual method even though some distortion of income occurs. See Rev. Proc. 83-40, 1983-1 C.B. 774. Respondent apparently determined that the distortion caused by the use of the Rule-of-78's accrual method in the context of short-term installment loans was not material, and we regard respondent's determination to be a proper exercise of his discretion under section 446(b). See *Mulholland v. United States*, 16 Cl. Ct. 252, 263 (1989).

We hold here, as we did in *Prabel*, that respondent properly exercised his authority under section 446(b) in disallowing accrued interest deductions on the note calculated by the CROBA partnership under the Rule-of-78's accrual method and in requiring the partnership to calculate the accrued interest deductions under the economic-accrual method.

In view of the foregoing,

*An appropriate order will be issued regarding the remaining issues involved.*