ESTATE OF HARRY W. RATLIFF, DECEASED, THE FIRST NATIONAL BANK AND TRUST COMPANY, VINITA, OKLAHOMA, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 16017–91.     Filed September 30, 1993.

*Thomas J. McGeady* and *John J. McQueen,* for petitioner. *Edith F. Moates,* for respondent.

OPINION

TANNENWALD, *Judge:* This case is before us on petitioner's motion for summary judgment. The issue is whether respondent is entitled, under section 446,[1] to allocate certain payments, designated to be applied to principal by agreement between the debtor and petitioner's decedent as creditor, to interest income during each of the taxable years of the decedent ending December 31, 1986, through December 31, 1988. If we hold that respondent is not so entitled, petitioner will prevail on that issue and on the additions to tax under sections 6653(a) and 6661 insofar as they are related to that issue, but will not prevail in respect of other issues involved herein and such additions to tax related thereto which petitioner has conceded for the purpose of the motion. If we hold that respondent is so entitled, petitioner's motion will fail and a trial will be necessary. Thus, petitioner's motion is technically a motion for partial summary judgment as to the

---

[1] All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

effect of the allocation agreement as a matter of law, and we will deal with the motion accordingly.

At the time the petition herein was filed, petitioner's decedent, Harry W. Ratliff (Ratliff), resided in Vinita, Oklahoma. He died on April 7, 1992. Petitioner's representative was substituted as petitioner on November 3, 1992.

Ratliff made loans to Shadowood Development Co. in 1983, 1984, 1985, and 1986 and to Shadowood Partners in 1987 as follows:

| Date | Amount | Interst rate | Monthly payment | No. of monthly payments | Date of first monthly payment |
|---|---|---|---|---|---|
| 6/3/83 | $600,000 | 14.00 | $7,990.42 | 180 | 3/1/83 |
| 11/1/84 | 400,000 | 14.95 | [1] 5,584.81 | 180 | 11/1/84 |
| 10/1/86 | 500,000 | 9.00 | 5,071.65 | 180 | 10/1/86 |
| 6/12/87 | 1,000,000 | 12.00 | 12,001.70 | 180 | 7/1/87 |

[1] The last payment on Oct. 1, 1999, was fixed at $5,482.12.

Each of said loans was evidenced by a promissory note and contained the following provisions:

All installments paid hereunder shall be applied to reduction of principal until all principal hereunder has been paid in full, and thereafter to interest.

Ratliff, a cash basis taxpayer, allocated all payments received on the aforesaid notes to principal and reported no interest income from them for taxable years at issue. Respondent determined that the payments Ratliff received in 1986, 1987, and 1988 on the 1986 and 1987 notes constituted interest income under section 1.446-2(b)(1) and (d)(1), Proposed Income Tax Regs., 51 Fed. Reg. 12031, 12032 (Apr. 8, 1986), which provided that, irrespective of any contrary formula of the parties, each payment under a loan was to be treated first as a payment of interest to the extent of accrued and unpaid interest; second, as a prepayment of interest; and third, as principal. Since the proposed regulations applied only to transactions occurring after May 6, 1986, respondent did not apply the foregoing principles to any payments under the 1983 and 1984 loans. On December 22, 1992, the aforementioned proposed regulations were withdrawn and new section 1.446-2 regulations were proposed, effective for debt

instruments issued on or after the date that is 60 days after the regulations have been finalized (an event which has not yet occurred). The new proposed regulations retained the same rule with respect to the allocation of payments to interest and principal. See sec. 1.446-2(e), Proposed Income Tax Regs., 57 Fed. Reg. 60755-60756 (Dec. 22, 1992). The rule incorporates what is commonly known as the "economic-accrual method" and constitutes the substantive basis of respondent's determination herein.

At the outset, we note that each party appears to adopt a tongue-in-cheek attitude toward the impact of the proposed regulations. Thus, petitioner seeks to avoid any impact by pointing out that the latest version of the regulations makes clear that they do not apply because they are not yet effective. On the other hand, petitioner seeks sustenance from the disparate treatment accorded by the earlier version to interest on post-May 8, 1986, loans and interest on loans made on or prior to that date. Respondent, on the other hand, in her answer in this proceeding filed on September 9, 1991, pointed to the earlier version of the proposed regulations, as the basis of her action, but has now firmly asserted that she does not rely solely on them to support her position herein. We find it unnecessary to take either version of the proposed regulations into account. In the first place, proposed regulations are accorded little, if any, value in terms of judicial deference. *Frazee v. Commissioner,* 98 T.C. 554, 582 (1992); *Estate of Wallace v. Commissioner,* 95 T.C. 525, 541 (1990), affd. 965 F.2d 1038 (11th Cir. 1992). Beyond this, we think that the resolution of the issue before us turns upon the extent to which the broad statutory discretion accorded respondent under section 446 applies irrespective of the agreement of the parties. It is to that issue to which we now turn.

In *Thor Power Tool Co. v. Commissioner,* 439 U.S. 522, 532-533 (1979), the Supreme Court confirmed the broad powers of respondent under section 446(b) and mandated that respondent's adjustments under that section cannot be disturbed unless they are "clearly unlawful". In *Prabel v. Commissioner,* 91 T.C. 1101, 1111-1113 (1988), affd. 882 F.2d 820 (3d Cir. 1989), a case also involving the allocation of payment on indebtedness between interest and principal, we

elaborated on the Supreme Court's pronouncement as follows:

Our task in evaluating changes in methods of accounting under section 446(b) is to determine whether respondent abused his discretion in changing the taxpayer's method of accounting. *RCA Corp. v. United States,* 664 F.2d 881, 886 (2d Cir. 1981), cert. denied 457 U.S. 1133 (1982). The taxpayer has a heavy burden of establishing that respondent did, in fact, abuse his discretion. *American Fletcher Corp. v. United States,* 832 F.2d 436, 438 (7th Cir. 1987); *Record Wide Distributors, Inc. v. Commissioner,* 682 F.2d 204, 206 (8th Cir. 1982), affg. a Memorandum Opinion of this Court. Respondent is not required to show bad faith on the part of the taxpayer before requiring a change in method of accounting. *Commissioner v. Seagram & Sons, Inc.,* 394 F.2d 738, 743 (2d Cir. 1968), revg. on other grounds 46 T.C. 698 (1966).

The issue herein requires us to synthesize the foregoing principles with the fact that historically, courts have generally adhered to the proposition that effect will be given to an arrangement between a creditor and a debtor allocating payments on an indebtedness to principal and/or interest, at least where that arrangement is bona fide; absent such an arrangement, payments are first allocated to accrued but unpaid interest and then to principal. *Prabel v. Commissioner,* 91 T.C. at 1113; *Bayou Verret Land Co. v. Commissioner,* 52 T.C. 971, 985-986 (1969), affd. on this issue 450 F.2d 850 (5th Cir. 1971); *Huntington-Redondo Co. v. Commissioner,* 36 B.T.A. 116 (1937); *Mason v. United States,* 453 F. Supp. 845, 848 (N.D. Cal. 1978).[2] Respondent's view is consistent with this principle.

*Prabel v. Commissioner, supra,* and *Mason v. United States, supra,* establish the impact of section 446(b) on allocation arrangements between a debtor and a creditor. As stated in Mason:

If obligor [sic] and debtor do agree in an arm's length transaction that interest is to be allocated differently than the general rule requires, the IRS will respect the agreement unless it finds that the method of accounting does not clearly reflect income. *Bayou Verret Land Co., supra,* 52 T.C. at 985-986; *Huntington-Redondo Co.,* 36 B.T.A. 116 (1937) (California law); Rev. Ruling 63-57, 1963-1 C.B. 103. If the IRS so finds, it may disallow the deduction pursuant to its general power to compute taxable income under an accounting method that does clearly reflect income. 26 U.S.C. sec. 446(b); *John N. Baird,* 68 T.C. 115, * * * (1977). See *Resnik v. C.I.R.,*

---

[2] See also *Newman v. Commissioner,* T.C. Memo. 1982-61; *Gries v. Commissioner,* a Memorandum Opinion of this Court dated May 26, 1950.

555 F.2d 634, 636 (7 Cir. 1977); *Sandor v. C.I.R.,* 536 F.2d 874 (9 Cir. 1976). [*Mason v. United States, supra* at 848.]

We apply this approach and reject petitioner's contention that the agreement of the parties precludes respondent, as a matter of law, from exercising her discretion under section 446(b). Indeed, to rule otherwise would exalt form over substance and would sanction the controlling effect of arrangements having nontax effects. See Note, "Interest and Principal: A Failure of Definition in the Internal Revenue Code", 72 Yale L.J. 200 (1962).

We also reject petitioner's argument that respondent's position, as set forth in Rev. Rul. 63-57, 1963-1 C.B. 103, and her failure to apply the allocation formula espoused herein to the taxable years prior to 1986 constitute a determination by respondent that an allocation of payments on an indebtedness in accordance with the agreement of the parties clearly reflects income under section 446(b) with the result that respondent's position herein must be rejected as requiring a change from an acceptable method of accounting. See *Prabel v. Commissioner,* 91 T.C. at 1112. Sustaining petitioner's argument would create a situation where approval by respondent of a particular method of accounting would freeze her position and prevent her from later adopting a contrary point of view. Such a consequence would unacceptably impair the broad discretion accorded respondent under section 446. Cf. *Sandor v. Commissioner,* 62 T.C. 469 (1974), affd. per curiam 536 F.2d 874 (9th Cir. 1976).

We are reinforced in our conclusion that the agreement of the parties does not preclude the application of section 446(b) by *Prabel v. Commissioner, supra,* wherein we held that respondent was not required to accept the allocation of payments to interest and principal in accordance with the Rule of 78's, which had been specifically incorporated into the notes involved and had also been accepted and used for many years and applied in varying contexts by several courts and respondent. In so holding, we stated: *"Notwithstanding * * * agreements between the parties to the loan,* the timing of interest deductions is subject to the requirement that the method of accounting for such deductions clearly reflects

income." 91 T.C. at 1114 (emphasis added); see also *Levy v. Commissioner,* 92 T.C. 1360 (1989).[3]

We are left with the question whether the effect of section 446(b) is so persuasive that it prevails even over a bona fide arrangement between debtor and creditor. Respondent, in her alternative position herein, suggests that the arrangements between Ratliff and Shadowood Development Co. and Shadowood Partners lacked economic substance. Petitioner responds that the arrangements were at arm's length and claims that the notes involved herein were high risk with the result that Ratliff will never recover the loan principal, much less any interest because the obligors on the notes are insolvent.[4] Essentially, petitioner is arguing that the prospects of recovery of amounts in excess of the principal of the notes were speculative and that therefore the allocation of all payments first to principal was bona fide; i.e., at arm's length and reflecting a business purpose.

We recognize that respondent does not have unbridled discretion under section 446 in that she cannot force a taxpayer to adopt another method of accounting if the taxpayer's method clearly reflects income. See *Hallmark Cards, Inc. v. Commissioner,* 90 T.C. 26, 34-35 (1988). A variety of factors enters into a determination whether a method of accounting for an item of income is a clear reflection of income. Thus, in the context of discounted loans, we have upheld the application of payments to principal in the first instance. *O'Dell v. Commissioner,* 26 T.C. 592 (1956).[5] We have followed the same path in sustaining the allocation of payments received by the taxpayer-purchaser of notes of third parties at a discount entirely to recovery of cost, i.e., principal, as against allocating such payments between principal and interest. *Underhill v. Commissioner,* 45 T.C. 489 (1966). The foundation of our position was the speculative character of

---

[3] Compare the situation where respondent seeks to apply sec. 446 without regard to other specific statutory provisions. See *Williams v. Commissioner,* 94 T.C. 464 (1990) (sec. 483 prevails over secs. 446 and 461); *Weis v. Commissioner,* 94 T.C. 473 (1990) (sec. 483 prevails over sec. 461). We further note that the statement in *Prabel v. Commissioner,* 91 T.C. 1101, 1103 (1988), affd. 882 F.2d 820 (3d Cir. 1989), made no reference to the fact that the transactions and notes involved were not at arm's length.

[4] It appears that a receiver for Shadowood Partners was appointed on Sept. 22, 1989, and that Shadowood Development Co. filed a petition for ch. 11 bankruptcy in October 1989.

[5] See also *Blackwell v. Commissioner,* T.C. Memo. 1956-184. We note that both *O'Dell v. Commissioner,* 26 T.C. 592 (1956), and *Blackwell* dealt with small loan businesses as did Rev. Rul. 63-57, 1963-1 C.B. 103.

the notes based upon an evaluation of several factual elements. *Id.* at 494. In a similar vein, we have sustained the deduction of prepaid feed expenses where the expenditure was based on a business purpose. *Packard v. Commissioner,* 85 T.C. 397, 422-434 (1985).

The evaluation of whether a method of accounting clearly reflects income and the impact, if any, of an arrangement between a debtor and creditor as to the allocation of payments between principal and/or interest in such an evaluation is essentially factual in nature and depends upon the circumstances of the particular case. See *Peninsula Steel Prods. & Equip. Co. v. Commissioner,* 78 T.C. 1029, 1045 (1982). Such an evaluation also involves consideration of the above-cited authorities dealing with discounts and prepaid expenses and of the relevancy of such an arrangement, irrespective of its bona fides or underlying business purpose. The record before us on petitioner's motion for summary judgment is insufficient to permit us to make the necessary evaluation. Consequently, further proceedings will be ordered so as to permit the parties to develop an appropriate record in this regard, as well as to enable us to dispose of the other remaining issues.

> *An appropriate order will be issued denying petitioner's motion for summary judgment.*